## UNDERWOOD TYPEWRITER COMPANY, Appellant, v. CENTURY REALTY COMPANY.

### In Banc, May 22, 1909.

1. **CONTRACT: Lease: Nude Agreement to Assign: Mutuality: Demurrer.** The lessee was in possession under a written lease, which provided that he could not assign or sublet without the written consent of the lessor indorsed thereon. Thereupon they entered into a written agreement to the effect that the lessor would give his consent to an assignment of the lease to an acceptable tenant, and for a breach of this agreement the lessor sues, alleging that, relying thereon, he, with knowledge of defendant, expended a large amount of time and labor in procuring an acceptable tenant and did secure such tenant, but defendant refused to perform, to his damage, etc. *Held*, that the agreement was a nude pact, unilateral, and lacking in mutuality, because it did not bind the lessee to do anything, yet is supported by a valuable consideration, namely, the performance of the condition, which the demurrer admits, and for its breach the lessor is entitled to damages.

   *Held*, by WOODSON, J., dissenting, with whom VALLIANT, C. J., and BURGESS, J., concur, that the promise of the lessor to permit the lessee to assign was unilateral and without consideration of any kind to support it; and the principle of law that performance of the condition supports the agreement applies only to bilateral contracts. The promise was solely for the benefit of the lessee and he did not agree

to furnish a tenant, and the performance of the condition can not perform the two-fold office of furnishing a consideration for the contract and at the same time constitute an agreement to procure an acceptable tenant.

2. ———: **Unilateral Agreement: Capricious Breach: Acceptable Tenant: Demurrer.** A nude unilateral agreement, supported by a valid consideration because the promisee has performed, is enforcible, and for its breach the promisor must respond in damages; and no mere whim or caprice will be accepted as a refusal to perform, although the promisor can recover nothing if the promisee does nothing in pursuance to the promise.

*Held,* by WOODSON, J., dissenting, that a demurrer admits as true only the facts well pleaded; and an averment that plaintiff "procured an acceptable tenant" is not an averment of the condition of the contract that the lessee was to procure a tenant acceptable to the lessor, and for that reason the demurrer should be sustained.

Transferred from St. Louis Court of Appeals.

REVERSED AND REMANDED.

*Carter, Collins & Jones* and *Jno. B. Denvir, Jr.,* for appellant.

*Dawson & Garvin* for respondent.

LAMM, J.—This case is here from the St. Louis Court of Appeals on the dissent of Judge BLAND. [118 Mo. App. 197.] The majority opinion of that court reversed the judgment of the circuit court sustaining a demurrer to the petition and remanded the case to be tried on its merits. We think the majority opinion is soundly reasoned on both principle and precedent. It should be read in connection with this; for we shall not restate its reasoning but rest content with adopting it, only supplying a sufficient statement here to make this opinion intelligible, and adding some observations of our own.

THE STATEMENT: Plaintiff was tenant of defendant in possession under a written lease for a five-

year term beginning on the first day of February, 1901, and ending on the last day of January, 1906. The lease provided, *inter alia,* that plaintiff could not assign or underlet without the written consent of defendant indorsed on it. Thereafter plaintiff and defendant entered into a written agreement to the effect that defendant would give its written assent to an assignment of the lease to an acceptable tenant. The petition pleads the lease, the provision against assigning or subletting and the subsequent written agreement to give consent in writing to an acceptable tenant and then states, in substance, that plaintiff in reliance on said written agreement, with the knowledge of defendant, expended a large amount of time and labor in securing an acceptable and satisfactory tenant and did secure such tenant, but that, notwithstanding that fact, defendant refused and still refuses to consent to the assignment of said lease and to permit said tenant to enter into the possession of said premises, though often requested to do so. That by reason of defendant's refusal to consent to said assignment of said lease plaintiff was and is prevented by defendant from securing such tenant at a large advance over the rent reserved by defendant under said lease, to its damage in the sum of $4,500. Wherefore, *etc.*

The circuit court sustained a general demurrer to the petition. Thereat plaintiff stood on its petition and, refusing to plead over, judgment went on the demurrer. From that judgment plaintiff appealed to the Court of Appeals, with the result indicated.

When the case came here it was assigned to Division One and there argued and submitted. That division was evenly divided and the cause came into Banc. So much by way of statement.

**THE OBSERVATIONS:** True, the typewriter company was not bound to do anything under the written agreement. True, it was executory only, and may be called in a sense a nude pact *as born.* True, defendant realty

company could at no time have sued the typewriter company on that agreement for failure to perform. Why *should* it sue? It already had a tenant in the person of the typewriter company. It wanted no other. But mutuality, in its essence, is but a *phase,* strictly speaking, of the consideration that will support a contract. It is not the only phase. If mutuality, in a broad sense, was held to be an essential element in every valid contract, to the extent that both contracting parties could sue on it, there could be no such a thing as a valid unilateral or option contract, or a contract evidenced by a subscription paper, or a contract to enforce a reward offer, or a guaranty, or in many other instances readily put in ordinary business affairs. The contract sued on in this case was made for the benefit of the typewriter company. It could furnish an acceptable tenant to defendant to take its place, or let it alone. In that respect it does not differ from many contracts, the breach of which is actionable at the option of the promisee.

Being in writing, and signed by the party to be charged, it was not obnoxious to the Statute of Frauds. Being fully performed by the promisee, it was no longer a *nude pact* but became clothed with a consideration executed on request. That performance on the strength of the offer made, having been accomplished at an outlay of time and labor on the part of the offeree or promisee, with defendant's knowledge, as alleged in the petition, makes it enforcible against the offerer or promisor so long as both parties were capable of contracting and their contract be not vitiated by fraud or as against good morals or public policy.

We take it as good doctrine worthy of all acceptance that it is the primary duty of courts to enforce contracts, not to abrogate them. A contract (such as this) between two parties not in fiduciary relation but dealing at arms-length, free from taint of fraud, duress

or other form of overreaching or oppression, when performed by the promisee, comes into a court of justice entitled to every fair presumption of validity. Such a contract bespeaks, in the first instance, judicial diligence and astuteness to support the act of the party by the act and art of the law. To that extent, at least, those fine rules of personal honor obtaining between man and man, requiring one to keep his word with another, accord with the rules of law.

It is afield to point to the contract word, "acceptable," and say that it would be illusory or unthinkable to suppose that its terms could be complied with by the plaintiff by its furnishing a tenant *acceptable* to the landlord. As to whether a landlord could stand on mere whim and caprice or some fanciful conceit in rejecting a party furnished by his tenant, under the contract sued on and the lease out of which it grew, we need not inquire. It is likely his refusal would have to stand on something better than mere caprice and whim. It is likely the law would compel such landlord to acquit himself by acting with *reason* and that courts would hold that the contract implied he would so act. But in this case, as pointed in the majority opinion in the Court of Appeals, the petition says that the party furnished was *acceptable*. The demurrer assumes that allegation true; hence, for present purposes, it is true.

Discussing the question of mutuality, a law-writer whose views are fortified by the weight due to a virile and a luminous mind, enriched with great research and strengthened by a profound grasp of legal principles, lays down the right doctrine to be: "But if without any promise whatever, the promisee does the thing required, then the promisor is bound on another ground. The thing done is itself a sufficient and a completed consideration; and the original promise to do something, if the other party would do something, is a continuing promise until the other party

does the thing required of him. A very large proportion of our most common contracts rests upon this principle.'' [1 Parsons on Contracts (9 Ed.), bottom p. 488.]

In a learned note to American Cotton Oil Co. v. Kirk, 15 C. C. A. 543, Mr. Clark, author of Clark on Contracts, in speaking to the point says: ''Again, contracts may be formed by the offer of a promise for an act and acceptance by performing the act, as where a man requests another to perform services for him, and the latter does so. The request is an offer of a promise to pay for the services, and performance of the services is an acceptance of the offer. This is described as consideration executed upon request. Here, also, the act of one party forms the consideration which supports the promise of the other. In these two cases one of the parties, in the formation of the contract, does all that he can be required to do, and there remains an outstanding obligation on the other side only. The contract is unilateral. It is obvious that in these cases the question of mutuality of obligation or contract cannot arise. The question is whether the act is such as to supply a consideration for the promise of the other party.''

To illustrate, if Roe write Doe: ''If you loan Lowe your Jersey cow, I will see she is returned in good order.'' And, if Doe (relying) loan her to Lowe and she is not returned in good order, is Roe not liable to Doe?

If Box write Cox: ''If you find my lost horses, Bucephalus and Rosinante, I will release the debt of $50 you owe me.'' And if Cox (relying) find and return Bucephalus and Rosinante, is his debt not paid to Box?

If Smith agree in writing with Jehu that he will pay him $100, if he drive from Jefferson City to Kansas City and return in four days, and Jehu presently (relying) drives it in four days, is not Smith liable?

If John agree in writing with Gambrinus that if the latter will not drink beer for a year, he will pay him a sum certain, and if Gambrinus (relying) drink no beer for that year, is not John bound?

Yet in each of these cases neither Doe, Cox, Jehu, or Gambrinus was bound to do anything. In each of them there was no consideration other than acceptance by actual performance on request. In the last two and the first no benefit accrued to Roe, Smith or John. But in each of them there was a consideration (*i. e.,* performance), moving from the promisee in the form of labor done and inconvenience and detriment suffered.

In an old case, Lindell v. Rokes, 60 Mo. 249, Rokes agreed to pay Lindell $50, if he would not use intoxi-cating liquors and beer for one year. Lindell performed. Rokes refused to pay, and, being sued, set up a want of consideration as a defense. The learned judge deciding that case referred to the statute (R. S. 1899, sec. 894) ordaining that: "All instruments of writing made and signed by any person or his agent, whereby he shall promise to pay to any other or his order, or unto bearer, any sum of money or property therein mentioned, shall import a consideration, and be due and payable as therein specified." But his reference to that statute was merely *arguendo.* The case was put on the reason of the thing and the law was declared to be that: "It is true that the plaintiff did not undertake, in direct terms, to do anything when the note was made, but the prevailing doctrine now is that, if one promise to pay another a sum of money if he will do a particular act, and he does the act, the contract is not void for want of mutuality, and the promisor is liable, though the promisee did not at the time of the promise engage to do the act; for upon the performance of the condition by the promisee, the contract becomes clothed with a valid consideration,

which relates back and renders the promise obligatory.''

Referring to section 894, *supra,* it should be observed that it merely directs that the particular kind of contract within the purview of the lawmaker shall *import* a consideration—that is, a consideration need not be pleaded, in the first instance. [County of Montgomery v. Auchley, 92 Mo. l. c. 129.] In other cases it is necessary to plead the consideration and prove it, whether by the contract or *aliunde,* we need not consider; for in this case the contract states the promise and points the consideration, viz.: the *act* of performance in furnishing an acceptable tenant. And in all cases on contracts it is open to the defendant to plead and prove a want or failure of consideration. [R. S. 1899, section 645.] In the case just quoted, the contract in evidence showed no consideration passed to the promisor, so that the law announced by the court became pertinent to that view of the case.

In another case (Williams v. Jensen, 75 Mo. 681), Stonebreaker, as principal, and Jensen, as surety, executed a note to Williams. Being sued on the note, Jensen contended that he was released from liability on two grounds. One of them was an extension of time to the principal by a valid contract without his consent. It was held that the contract to extend was valid as supported by a sufficient consideration, hence Jensen was discharged as surety. The consideration for the extension agreement arose in this way. When the note was about due, Williams agreed with Stonebreaker he would extend the time to a date certain if Stonebreaker would get his wife to sign the note. Stonebreaker procured this to be done without his surety's knowledge or consent. The signature of Mrs. Stonebreaker was worthless, as the law then stood, she being a married woman with no separate estate, and Williams contended there was no consideration

for the extension agreement. But this court, disallow‑ ing that contention, said: "Whatever may have been his motive, he agreed to extend the time of payment upon the condition that her husband would obtain her ·signature to the note; and the obtainment of her sig‑ nature, though such signature be of no value to Wil‑ liams, constitutes a sufficient consideration for his agreement to extend the time of payment. It is not always necessary that the consideration for a promise should be of some value to the promisor. Damage or inconvenience to the promisee is a sufficient considera‑ tion, and where the court can see that there may have been such inconvenience it will uphold the contract. It may have been an inconvenience for Stonebreaker to secure the signature of his wife, and this much ap‑ pearing, the law will shut its eyes to the inequality between the consideration and the promise." At this point the court cites Lindell v. Rokes, *supra*. Contin‑ uing, the court said: "In Brooks v. Ball, 18 Johns. 337, a promise to pay a certain demand if the claimant would swear to its correctness, was enforced. Any trouble or labor, however slight, undertaken by one person at the request of another, will support a prom‑ ise by such other person, although the trouble or labor be of no benefit to the promisor. [Addison on Conts. (Morgan's Ed.), sec. 9; Clark v. Sigourney, 17 Conn. 511.] Being of opinion that the agreement to extend the time of payment was supported by a sufficient consideration, the judgment, which was for the defend‑ ant, will be affirmed."

In a late case in Banc (Strode v. Railroad, 197 Mo. l. c. 622, *et seq.*), to which we all agreed, our Broth‑ er GRAVES reviewed authorities and case-learning on the question of consideration and announced the right doctrine to be, as laid down in 6 Am. and Eng. Ency. of Law (2 Ed.), 689, viz.: "If the promisee do any act to his injury, however slight, at the request of the

promisor, either express or implied, the detriment sustained operates as a consideration.''

BARCLAY, J., in Trustees of Christian Univ. v. Hoffman, 95 Mo. App. l. c. 495, with the concurrence of all his learned brethren, said: ''But, apart from the inference of law arising under the above-mentioned statute'' (R. S. 1889, sec. 894, *supra*), ''it has been held that where such a promise as that under review has been made to an institution like that of the plaintiffs, and, before the promise is withdrawn, obligations have been created or expenses incurred by the promisee upon the faith of the promise, these facts furnish a consideration to support the original agreement, although, in the first instance, it may have partaken somewhat of the nature of a gift. [Koch v. Lay, 38 Mo. 147; Pitt v. Gentle, 49 Mo. 74; Corrigan v. Detsch, 61 Mo. 290; School District v. Sheidley, 138 Mo. 672.]'' See also, authorities collected in the principal opinion, 118 Mo. App. 197, and there applied.

But I have pursued the matter further than intended. The upshot of it all is the conclusion that the petition was good and the demurrer bad. Hence, the judgment of the circuit court should be reversed and the cause remanded to be tried on its merits.

It is so ordered. *Gantt, Fox* and *Graves, JJ.,* concur; *Woodson, J.,* dissents in an opinion filed, in which *Valliant, C. J.,* and *Burgess, J.,* concur.

## DISSENTING OPINION.

WOODSON, J.—This case was originated in the circuit court of the city of St. Louis, and had for its object the recovery of $4,500 damages, alleged to have been sustained by plaintiff because of a breach of written permission, whereby the latter was authorized to sublet certain floor space in defendant's building, which plaintiff had leased from defendant.

The petition was in the following language (omitting caption):

"Now comes the plaintiff in the above-entitled cause, and by leave of court first had and obtained, files this, its second amended petition herein, and for cause of action states that it is a corporation duly organized and existing under and by virtue of the laws of the State of New Jersey. That the defendant is a corporation organized and existing under and by virtue of the laws of the State of Missouri. That the plaintiff was formerly known as the Wagner Typewriter Company, but it has duly changed its name to Underwood Typewriter Company. That defendant, Century Realty Company, is the successor of the Century Building Company.

"That on the 5th day of December, 1900, plaintiff entered into an agreement in writing with said Century Building Company, whereby plaintiff leased the space known as No. 309 North Ninth street in the city of St. Louis, State of Missouri, and certain space appurtenant thereto, for a period of five years beginning on the first day of February, 1901, and ending on the thirty-first day of January, 1906. That plaintiff thereupon entered into possession of said premises. That said agreement provided, among other things, that neither said premises nor any part thereof should be assigned or underlet without the written consent of defendant indorsed thereon. That plaintiff secured from defendant its written agreement to give its written consent to an assignment of said lease to an acceptable tenant. That relying upon said written agreement, plaintiff, with the knowledge of defendant, expended a large amount of time and labor in securing an acceptable and satisfactory tenant for the space embraced in said lease, and did secure such tenant for said space. That notwithstanding the fact that plaintiff had procured an acceptable tenant for said space, defendant refused and still refuses to consent

to the assignment of said lease and to permit said tenant to enter into the possession of said premises though often requested to do so. That by reason of defendant's refusal to consent to said assignment of said lease as aforesaid, plaintiff was and is prevented by defendant from securing such tenant at a large advance over the rent reserved by defendant under said lease to its damage in the sum of four thousand five hundred dollars.

"Wherefore, plaintiff prays judgment for four thousand five hundred dollars."

To this petition the defendant filed a general demurrer, which was by the trial court sustained. The plaintiff declined to plead further and judgment was rendered for the defendant. From that judgment the plaintiff appealed to the St. Louis Court of Appeals. By a divided court the judgment of the circuit court was reversed and the cause remanded. *Bland, P. J.*, filed a dissenting opinion for the reasons therein stated, and the cause was for that reason transferred to this court under the mandate of the Constitution.

I. By reading this petition it will be seen that the respondent leased to appellant certain floor space in the Century Building for a period of five years, with a clause therein prohibiting the latter from assigning or subletting the premises without written permission. The petition then charges respondent agreed to give its consent to appellant to assign said lease to an acceptable tenant, but subsequently refused to consent to said assignment, notwithstanding respondent had procured an acceptable tenant; and that relying upon said agreement it had expended a large amount of time and labor, with the knowledge of respondent, in securing said tenant. The petition then states plaintiff had been damaged in the sum of $4,500. The demurrer challenges the sufficiency of the alle-

gations of the petition to constitute a cause of action against the respondent.

The petition does not allege that appellant paid or agreed to pay respondent any sum whatever in consideration for the permit to appellant to assign the lease. If that was the extent of the agreement between them, then clearly the agreement would be void for want of consideration to support it. Realizing that infirmity in the so-called agreement, the appellant undertakes to strengthen and cure that defect by alleging that it relied upon the agreement, and with the knowledge of respondent it expended a large amount of time and labor in securing an acceptable tenant for the former.

There can be no question but what the expenditure of time and labor, in pursuance to a contract, constitutes a valid consideration therefor, and if otherwise valid its validity will be upheld by the courts. That rests upon hornbook law, and as far back as the case of Marks v. Bank, 8 Mo. l. c. 319, this court, speaking through Scott, J., used this language: "It is unnecessary that the consideration should be adequate in point of actual value, the law having no means to decide upon this matter. If the least benefit or advantage be received by the promisor from the promisee, or a third person, or if the promisee sustain any, the least injury or detriment, it will constitute a sufficient consideration to render the agreement valid." While the case in which that language was used has been practically overruled in some of the later cases, yet none of them question the soundness of the principle of law enunciated in those words. [Wiley v. Hight, 39 Mo. 130; Wild v. Howe, 74 Mo. l. c. 553.]

But that principle of law falls far short of healing the imperfection before pointed out in the appellant's case, for the reason that that rule does not apply except in bilateral contracts, where there is a promisor and promisee. In the case at bar the prom-

ise of respondent to permit appellant to assign the lease was unilateral, and was without consideration of any kind to support it. The appellant never at any time, even down to the time of bringing this suit, agreed to find or furnish respondent a suitable tenant; and if appellant had at any time, or even now should withdraw its tender of such tenant, clearly the respondent would have no cause of action against the former for said refusal or withdrawal for the obvious reason that it never agreed to do so. According to the allegations of the petition, the appellant was under no legal or moral obligation to find for respondent a suitable tenant for the occupancy of the floor space in question.

For the purpose of illustration, let us suppose a farmer should enter a shoestore and ask the proprietor thereof if he would take a cord of hickory wood for a certain designated pair of shoes, and in reply thereto the proprietor should say yes; and without more the farmer should turn and walk from the store without agreeing to take the shoes or to furnish the wood, and he should then return home and chop a cord of hickory wood, load it upon his wagon, haul it to town, drive up to the store, and say to the proprietor that he had chopped the wood, hauled it in for him, and demand the shoes in consideration of and in payment for the wood; and in reply thereto suppose the merchant had said to the farmer that he was sorry but he could not deliver the shoes to him, for the reason that he had sold them during the time which had elapsed between the first conversation and the time when the wood was hauled to town and tendered to the merchant; could it be seriously contended that the farmer would have a cause of action against the merchant for breach of contract for his failure to deliver the shoes? I think not, for the reason the farmer never agreed to take the shoes, or to cut, haul and deliver the wood in exchange for them. Such a con-

tract, if it may be so called, would clearly be unilateral in character, and the subsequent tender of the wood would not change the agreement into a bilateral contract. The tender of the wood could not perform the twofold office of furnishing a consideration for the contract, and at the same time constitute an agreement to accept the shoes, which had never been done before. And the same is true as regards the case at bar. The finding of a suitable tenant could not perform the twofold function of furnishing a consideration to support the promise of the Century Realty Company to agree to subletting of·the floor space to such tenant, and at the same time constitute an agreement on the part of the typewriter company to furnish such tenant, which, confessedly, it has never done down to this date in any mode or manner whatsoever.

The principle announced in the majority opinion is too far reaching and startling in its effect. Under that holding no merchant or property-owner could safely answer a question as to what he would take for a certain article or piece of property, for, if he should do so, he would be liable at any time within the period prescribed by the Statute of Frauds to be called upon to deliver the property to the party who asked the question, and be subjected to an action for damages for breach of contract for failure to deliver the property, if for any reason he should see proper to decline to deliver it, even though he had disposed of it in the mean time.

It should be borne in mind that the promise of the realty company was not made for its benefit, but was made solely for the benefit of the typewriter company; and there was, of course, no occasion for appellant to make a promise of any kind to furnish a tenant for the respondent; and if the allegations of the petition are true, then no such promise was in fact ever made. Quite a different proposition would have been presented had the petition alleged appellant

agreed to secure the tenant, and that in pursuance to that agreement it had procured an acceptable tenant, at an expenditure of a large amount of time and labor; but, as before stated, no such allegation is found in the petition, nor is any such idea hinted at therein.

II. I am also clearly of the opinion that the demurrer was properly sustained upon another ground, and that is this: the petition charges "that notwithstanding the fact that plaintiff had procured an acceptable tenant for said space, defendant refused and still refuses to consent to the assignment of said lease and to permit said tenant to enter into the possession of said premises though often requested to do so."

According to the contract pleaded, plaintiff was required to furnish a tenant to defendant who was acceptable to the latter, which, of course, was personal to it, and under the contract the defendant alone had the right to determine who was an acceptable tenant, and no one else could determine that question for it. Now, the allegation of the petition is, that plaintiff "procured an acceptable tenant for said space," but fails to charge that it was acceptable to defendant, or that defendant had informed plaintiff that the tenant so procured was acceptable to it. In other words, the petition pleads a conclusion—that is—that the tenant was acceptable, and not the facts which show the tenant was acceptable to defendant.

It is elementary that such pleading is bad, and that a demurrer thereto admits as true only the facts pleaded, and which are well pleaded. [Knapp, Stout & Co. v. St. Louis, 156 Mo. 343; Warder v. Evans, 2 Mo. 205; Seed Co. v. Plant & Seed Co., 23 Mo. App. 579.]

I am, therefore, of the opinion that the action of the trial court in sustaining the demurrer to the petition was proper, and that the judgment of the St. Louis Court of Appeals reversing the judgment of the circuit court is erroneous.

*Valliant, C. J.,* and *Burgess, J.,* concur.