COMMERCIAL LITHOGRAPHING CO., Respondent,

v.

FAMILY MEDIA, INC., Appellant.

No. WD 36389.

Missouri Court of Appeals, Western District.

Aug. 13, 1985.

**937**

Richard E. McLeod, Vivian W. McLeod, Shook, Hardy & Bacon, Kansas City, for appellant.

John W. Zimmerman, Berman, Deleve, Kuchan & Chapman, Kansas City, for respondent.

Before CLARK, C.J., and KENNEDY and NUGENT, JJ.

CLARK, Chief Judge.

This case presents the question of whether a non-resident magazine publisher incorporated and domiciled in New York is subject to personal jurisdiction in a Missouri court when sued for unpaid printing bills incurred in Missouri. The trial court ruled that respondent Missouri printing company properly obtained service of process on ap-

pellant magazine publisher in New York by a summons served there under authority of § 506.500, RSMo.Supp.1984. A jury trial which followed resulted in judgment for respondent on the account amounting to $23,899.54 and the publisher-defendant appealed.

Respondent engages in the lithographing business from its premises in Kansas City producing a variety of printed materials. Appellant publishes and distributes magazines throughout the country and maintains offices in New York, Chicago and Los Angeles. From time to time appellant inserts mailing cards in its publications which solicit subscriptions. These tear away cards are bound into the magazine and invite the customer to fill in the blank spaces to obtain regular mail delivery of the publication selected. It is these cards which respondent printed and delivered that form the basis for the unpaid account.

The business relationship between the parties originated in 1975 when respondent's president visited appellant's offices in New York and solicited their printing account. A number of orders for printing followed, some forty in number, and these were processed without incident. The account which is the subject of this suit consisted of four orders placed and produced between December, 1981 and March, 1982. The method for ordering the insert cards is significant, as will hereafter appear, in identifying the situs of contract formulation.

Respondent's evidence, essentially uncontroverted, traced the origin of each of the four printing orders in suit to a telephone call from appellant's New York office giving specifications for the cards ordered. A written communication from appellant to respondent followed giving the copy, art work and other details for the content of the printed material. For each order, respondent supplied a price quotation based on the cost of paper and ink, labor and other production expenses. Before transposing the copy and art work to a litho-

graphing plate, respondent sent to appellant for approval a "photo print proof" showing the insert card as it would be printed. Upon a return of the proof with appellant's approval, respondent then "plated" and printed the order, made delivery in accordance with appellant's instructions to a printing plant in Lincoln, Nebraska where the magazines were produced and sent a billing invoice to appellant.

Appellant, a New York corporation, is not registered to do business in Missouri and maintains no office or the ownership of any property here. No representatives of appellant came to Missouri at any time in connection with the subject printing orders, all communications having been by mail and telephone between appellant's office in New York and respondent's printing plant in Kansas City. The same practice was followed in the prior business conducted between the parties in processing the printing orders between 1975 and 1981. The orders involved in this suit are distinguished from the previous transactions in that the billing statements generated after delivery of the orders produced neither payment nor response. This suit followed.

It is generally agreed that the principal issue in the case is whether the facts recited above give the Missouri court personal jurisdiction over appellant pursuant to § 506.500, RSMo.Supp. 1984 because appellant either made a contract in Missouri or transacted business in Missouri. In the trial court, appellant moved to quash the return of service of summons made in New York on the ground that appellant as a foreign corporation not admitted in Missouri had insufficient contacts with Missouri to support jurisdiction of Missouri courts over appellant conformable to constitutional due process. The trial court overruled the motion.[1] Appellant contends this was error.

■ Section 506.500, RSMo.Supp.1984 provides that any person or corporation, whether resident in Missouri or not, submits to the jurisdiction of Missouri courts by committing certain acts including the transaction of business within the state or the making of any contract within the state. In order to qualify the case as one in which a Missouri claimant may employ the long arm jurisdiction of Missouri courts to summon a non-resident defendant, it must first appear that the transaction fits into one of the subsections of the statute and, in addition, that the assumption of jurisdiction accords with the due process requirements of the Fourteenth Amendment. *State ex rel. Metal Service Center v. Gaertner*, 677 S.W.2d 325, 327 (Mo. banc 1984). When the issue of personal jurisdiction over a non-resident defendant is raised, the burden is on the plaintiff seeking to avail himself of the long arm statute to establish a prima facie case for jurisdiction. *Osage Homestead, Inc. v. Sutphin*, 657 S.W.2d 346, 350 (Mo.App.1983).

We first consider whether the printing orders in suit were, as respondent contends, Missouri contracts. Respondent argues that they were basing the contention first on the proposition that a contract is complete when the last act necessary to its formation is done and second, that the place of the contract is that where the final act is performed. *State ex rel. River Corp. v. State Tax Commission*, 492 S.W.2d 821 (Mo.1973), *Shady Valley Park & Pool, Inc. v. Dimmic*, 576 S.W.2d 579 (Mo.App.1979). Respondent says the agreements by it to produce the insert cards and the corresponding obligations by

1. The record on appeal includes no document setting out a ruling on appellant's motion to quash service and the transcript makes no mention of the subject. Appellant's brief states that the motion was overruled on the day of trial some eight months after the motion was presented. If it be assumed that the motion was denied immediately prior to commencement of

trial, the ruling was patently flawed because the only evidence then available was an affidavit filed by appellant setting out facts which support the motion. Disposition of the case here relies on facts adduced at trial all of which had been presented when appellant renewed the challenge to jurisdiction in a motion for new trial.

appellant to make payment ripened into binding contracts when respondent accepted the orders by undertaking the work to print the cards. Because the printing process was performed wholly in Missouri, respondent argues that the agreements were Missouri contracts.

Respondent's theory of the case assumes the formulation of unilateral contracts, that is, contracts where only one of the parties makes a promise and the consideration therefor is not another promise, but performance. *See Garrett v. American Family Mutual Insurance Co.*, 520 S.W.2d 102, 111 (Mo.App.1974). This contention ignores facts established by respondent's own evidence which showed formation of a bilateral contract before any printing of the cards commenced. In response to a question about how agreement was reached on the price to be charged for the printing, respondent's president testified: "Well, the only discussion was that we figured the amount of paper that was required, the labor, the ink, the processing (sic) quoted Ms. Gardiner (appellant's representative in New York) the price, she okayed it and we went into production."

■ A contractual relationship arises where the conduct of the parties supports a reasonable inference of a mutual understanding that one party perform and that the other party compensate for such performance. *Freshour v. Schuerenberg*, 495 S.W.2d 116, 119 (Mo.App.1973). The mutual understanding reached as to the printing work involved in this case came as a consequence of the telephone conversations and correspondence and was concluded before actual production of the orders began. That understanding, as exemplified by the testimony quoted above, amounted to a bilateral contract, a promise for a promise, that respondent would print the cards with the copy as supplied for the agreed price and that appellant would pay for the product when delivered. Indeed, once appellant's representative "okayed it", each party was bound to its contractual obligation,

respondent to print the insert cards and appellant to pay the charges. Composition of the photo print proof, printing the cards and delivery of the order to the Nebraska printing plant were acts of respondent in performance of the contract and not ingredients of the contract formation.

■ Having determined that the parties contracted for the insert card printing job as analyzed above, the question next posed is whether respondent adduced prima facie proof the contract was made in Missouri. The facts as stated indicate it did not. Respondent's evidence was, in substance, that appellant made inquiry in each of the four cases as to printing an order for cards and supplied the copy and art work proposed to be used. Respondent then figured the cost for the job and relayed the information to appellant. The final act binding the agreement was appellant's assent to the quoted price. On the authority of *State ex rel. River Corp. v. State Tax Commission, supra,* and *Shady Valley Park & Pool, Inc. v. Dimmic, supra,* the contract was completed in New York when appellant agreed to respondent's quotation of terms. The result was a New York contract, at least for purposes of determining whether appellant submitted to the jurisdiction of Missouri courts under the long arm statute.

The second prong of § 506.500, RSMo. Supp.1984 which subjects a non-resident to Missouri jurisdiction is doing business in the state. Respondent contends appellant is also liable to respond on this account because of appellant's activities in distributing its magazines. The pertinent facts, generally assumed for purposes of the point, are these. Once the insert cards were printed by respondent, they were shipped to Nebraska where appellant's magazine, "Country Music", was printed. In that process, the solicitation cards were bound into the magazines and ultimately reached persons throughout the country who purchased the magazine. A number of copies of Country Music magazine, including the insert cards printed by respon-

dent, were for sale in Missouri and were bought by Missouri residents.

Respondent argues that distribution by appellant in Missouri of magazines containing the subscription solicitation for magazine and product sales includes the ingredient of doing business in the state as contemplated under § 506.500, RSMo.Supp. 1984. Principally relied on is *State ex inf. Danforth v. Reader's Digest*, 527 S.W.2d 355 (Mo. banc 1975). There, Reader's Digest conducted a mass mailing to residents of Missouri offering the chance to participate in a "Sweepstakes" if the recipient returned a booklet in an official reply envelope. The mailing also offered the opportunity to forward a magazine subscription and to purchase merchandise. The attorney general brought quo warranto contending the Reader's Digest activity violated Missouri lottery laws and service was obtained pursuant to § 506.500, RSMo. 1969. Relying on the standards set out in *State ex rel. Deere and Company v. Pinnell*, 454 S.W.2d 889 (Mo. banc 1970), the court held the Reader's Digest promotiunal activity did constitute doing business in Missouri and it was subject to long arm service of process.

Respondent says appellant's solicitation activity by use of the insert cards is the same as that of Reader's Digest in the cited case. Even if such be so, a doubtful proposition, the theory is of no aid to respondent in its suit on the unpaid account.

■ In order to avail itself of long arm jurisdiction, the plaintiff must first show that the transaction between the parties fits into one of the subsections of the statute, here, doing business in the state. If successful at this point, it must then show the assumption of long arm jurisdiction accords with the due process requirements of the Fourteenth Amendment. *State ex rel. Metal Service Center v. Gaertner, supra.* The frequency of transactions in the state by the foreign entity is not necessarily a required element to satisfy due process,

but it is vital to the exercise of long arm jurisdiction that the cause of action in suit arise out of the act or transaction consummated in the forum state. *State ex rel. Caine v. Richardson*, 600 S.W.2d 82, 84 (Mo.App.1980) citing *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

■ Respondent's cause for Missouri jurisdiction fails because its suit was not based on the act relied on to prove appellant was doing business in Missouri. Quite obviously, respondent's interest in the transaction did not extend beyond its delivery of the printed matter. The use appellant made of the insert cards was irrelevant to its obligation for payment of the printing charges which were owed whether appellant's magazines were sold in Missouri or not. Under the precepts discussed above, respondents make no case for Missouri long arm jurisdiction over appellant to collect its printing charge merely because some of the magazines containing the printed matter produced by respondent were offered for sale in Missouri.

For the reasons given, we hold that appellant was not subject to foreign service of process issued by a Missouri court under claim of jurisdiction pursuant to § 506.500, RSMo.Supp.1984 in this case and that the trial court erred in failing to order service quashed. This disposition renders unnecessary any discussion of appellant's second point of error.

The judgment is reversed.

All concur.