Speedy KETCHERSIDE d/b/a Speedy Ketcherside Auction & Realty, Plaintiff–Respondent,

v.

Sandy McLANE, d/b/a McLane Investment Company, Defendant–Appellant.

No. 24877.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 28, 2003.

Matthew J. Koetting, O'Loughlin, O'Loughlin & Koetting, L.C., Cape Girardeau, for Appellant.

Mark A. Kennedy, Kennedy, Kennedy & Robbins, Poplar Bluff, for Respondent.

KENNETH W. SHRUM, Judge.

Sandy McLane ("Defendant") appeals from a judgment entered in favor of Speedy Ketcherside ("Plaintiff") for breach of contract. On appeal, Defendant presents two claims of trial court error that allegedly require reversal. In both points relied on, Defendant argues that the evidence was insufficient to support a finding that each essential element for the formation of a contract existed. We disagree. We affirm.

### STANDARD OF REVIEW

This being a court-tried case, we review pursuant to the well-known principles enunciated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). *Real Estate Investors Four, Inc. v. Am. Design Group, Inc.*, 46 S.W.3d 51, 56 (Mo.App. 2001). We will affirm the trial court's judgment unless there is no substantial evidence to support it, unless it is against

the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* We review the evidence and all reasonable inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences. *Sanders v. Ins. Co. of North Am.*, 42 S.W.3d 1, 8[5] (Mo. App.2000). Furthermore, we defer to the trial court's determination of witness credibility and recognize that the court is free to accept or reject all, part, or none of the testimony presented. *Id.* at 8.

## FACTS

Defendant owned and rented property in Poplar Bluff, Missouri, when the tenant, SuperValue (a grocery store), decided to "quit possession." Defendant then bought back the equipment in the store for $25,000. A new tenant was moving in shortly, and Defendant wanted to sell the old grocery store equipment via an auction. Consequently, during early July 2000, Crystal Walker ("Walker"), Defendant's agent, contacted Plaintiff (an auctioneer) to conduct the sale.

Walker told Plaintiff that Defendant wished to sell everything in the store. Walker stated that the auction needed to be conducted "as soon as possible[ ]" because the new tenants would be moving into the store. Plaintiff claimed that Walker told him to "proceed with the auction and get it going." Plaintiff told Walker that his commission would be ten percent of the total sales made the day of the auction. Walker told Plaintiff, "I want you to handle the auction." The pair also discussed advertising and agreed that a limit would be placed on it before spending any money.

As instructed, Plaintiff proceeded with the preparatory aspects of the auction. In much detail, Plaintiff inventoried the entire store because the list provided by Defendant's employee was outdated. Plaintiff photographed the equipment and made detailed lists so as to advertise the make, model, and features of the equipment. Plaintiff used this information to construct a preliminary proof of the sale bill, which would advertise everything offered at the auction. Plaintiff also promoted the sale at other auctions he was conducting during that interim. Summarily stated, Plaintiff testified he "had everything ready to go," and his "work was done all except the actual auction . . . and delivering the sale bills." He claimed that "[t]he actual auction itself is not the biggest deal."

Sometime thereafter, however, Plaintiff was informed that Defendant "elected to go with another auction company." From early July to July 14, Plaintiff was never told that other auction companies were being considered for the sale. It was on July 14 that Plaintiff was first told to submit a proposal in writing (contract or bid). A few days later, Plaintiff was informed that another auctioneer received the job.

Plaintiff then filed his breach of contract lawsuit. The trial court entered detailed findings of fact and conclusions of law, ultimately entering judgment in favor of Plaintiff. The court found, *inter alia*, that "[t]he contract entered into by the parties was by its nature, a unilateral contract and when Plaintiff began performing pursuant to the directions of . . . Walker, the unilateral contract became enforceable." The court awarded Plaintiff $5,516.75 (ten percent commission of total sales at the auction). This appeal followed.

## DISCUSSION AND DECISION

In Defendant's first point, she alleges the trial court committed reversible error in holding that Defendant breached a contract with Plaintiff "because a contract was never formed, due to the lack of mutual assent, in that the parties never agreed to

essential terms, never moved past the negotiation stage and there was never a meeting of the minds." In the argument section of Point I, Defendant claims the parties never agreed to the following terms: (1) the commission Plaintiff would receive, (2) the date of the auction, (3) which equipment would be sold, and (4) the method of advertising to be used. As such, Defendant argues that the conversations between Plaintiff and Walker were mere negotiations.

In her second point on appeal, Defendant alleges the court erred in finding a breach of contract occurred because "a contract was never formed, due to the absence of acceptance by performance in that ... [the] offer was rescinded before [Plaintiff] began to perform." In this argument, Defendant claims that a unilateral contract was contemplated, but Plaintiff failed to substantially perform before Defendant rescinded, i.e., he did not timely accept the offer. Because both points are interrelated, we discuss them in conjunction.

 "The essential elements of a contract are: (1) competency of the parties to contract; (2) subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation."[1] *Baris v. Layton,* 43 S.W.3d 390, 396[13] (Mo.App. 2001). The term "mutuality of agreement" implies a mutuality of assent or a meeting of the minds to the essential terms of a contract. *Smith v. Hammons,* 63 S.W.3d 320, 325[7] (Mo.App.2002); *Baris,* 43 S.W.3d at 397[14]. Negotiations or preliminary steps towards the formation of a

contract do not satisfy this element. *Hammons,* 63 S.W.3d at 325.

 "A unilateral contract is a contract in which performance is based on the wish, will, or pleasure of one of the parties." *Cook v. Coldwell Banker,* 967 S.W.2d 654, 657[3] (Mo.App.1998). The promisor receives no promise in return as consideration for the original promise. *Id.* at 657[4]. The contractual relationship arises when the conduct of the parties supports a reasonable inference of a mutual understanding that one party perform and the other party compensate for such performance. *Commercial Lithographing Co. v. Family Media, Inc.,* 695 S.W.2d 936, 939[3] (Mo.App.1985). "An offer to make a unilateral contract is accepted when the requested performance is rendered." *Cook,* 967 S.W.2d at 657[6]. The offer cannot be revoked where the offeree has made substantial performance. *Id.* at 657.

 In Point I, Defendant claims that Walker and Plaintiff were merely negotiating, and they lacked mutuality of agreement because they had not agreed upon many essential terms (the commission, the date of the auction, the equipment to be sold, and the method of advertising).[2] Apparently, Defendant misconstrues our standard of review because this record provides ample evidence to support the judgment.

Plaintiff informed Walker that his commission was ten percent of the total sales made at the auction, and she told him to "get it going" and "I want you to handle the auction." The auction was to be conducted as soon as possible, but before the

---

1. Technically speaking, there is no "mutuality of obligation" when discussing unilateral contracts. *Underwood Typewriter Co. v. Century Realty Co.,* 220 Mo. 522, 119 S.W. 400, 404 (1909); 2 JOSEPH M. PERILLO & HELEN HADJYANNAKIS BENDER, CORBIN ON CONTRACTS § 6.1 at 197 (rev. ed.1995); 1 SAMUEL WILLISTON & RICHARD

A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 1:17 at 44–45 (4th ed.1990).

2. Defendant has not challenged the finding that Walker was her agent and authorized to contract on her behalf.

new tenants were to take possession of the premises. Walker also stated that everything in the store was to be sold. The two further discussed advertising and agreed a limit would be set before spending any amounts on it.

■ It was reasonable for the court to conclude a contract was formed. Walker told Plaintiff to conduct all steps necessary to get the auction started and that everything was to be sold. Plaintiff told Walker that his commission was ten percent. This disposes of Defendant's contention that the contract lacked two essential terms (price and equipment). Mutuality of agreement is determined by looking to the intentions of the parties as expressed or manifested in their words or acts. *Hammons,* 63 S.W.3d at 325[12].

As to the date of the auction, although no set date was *at that time* agreed upon, Plaintiff explained that he generally set the date when he obtained the seller's approval of a sale bill. Specifically, Plaintiff testified:

> "I had everything ready to go. The sale bills was [sic] to be approved by the sellers. I always let them finalize before I go to print. And then at that time, I'd go and we'd set a date at that time of what date the auction would be.
>
> . . . .
>
> "[O]nce we had the sale bill completed, we was [sic] going to pick out a date that was desirable for all parties involved."

Plaintiff also stated that he and his staff "were sitting on go," and that he was prepared to do the advertising, such as television, when he was "shut down." From this, it was reasonable for the trial judge to infer that Plaintiff was ready, willing, and able to conduct the auction before the new tenants moved into the building. This inference is further strengthened by the fact that the auction-eer, who eventually conducted the sale, prepared the auction within the same time frame that Plaintiff faced, and Plaintiff testified that the only advertising difference was that he would have advertised on television rather than the Internet.

■ Essential terms of a contract must be certain or capable of being rendered certain via application of ordinary canons of construction or by reference to something certain. *Burger v. City of Springfield,* 323 S.W.2d 777, 783[5] (Mo. 1959). "[T]hat is, terms of agreement must be sufficiently definite to enable the court to give it an exact meaning." *Id.* at 783. Uncertainty or indefiniteness in contracts, however, are matters of degree. *Shofler v. Jordan,* 284 S.W.2d 612, 615[6] (Mo.App.1955). In determining whether a term is too uncertain to be enforced, a court is guided by general principles of law applied "with common sense and in the light of experience." *Id.*

Here, the actual day for the auction was not an essential term of the contract. The essential time factor was for the auction to be held before the new tenants took possession of the premises. As stated above, there was sufficient substantial evidence to establish that the Plaintiff was capable of performing within the essential period, i.e., after the preparatory stages were complete and before the tenants moved in. Consequently, this argument lacks merit.

As for the advertising, Plaintiff and Walker agreed on at least one form of advertising, i.e., a sale bill, but it is reasonable to infer that this was not an essential term of the contract. This follows because Defendant admitted that the contract she eventually signed with another auctioneer contained no provisions for advertising.

In sum, by relying upon these four terms of the contract to support the argument that the contract lacked mutuality of

agreement, Defendant has failed to demonstrate any error in the trial court's finding that a contract was formed. Point I is denied.

 Turning to the second point, Defendant claims that Plaintiff failed to accept the offer because he did not substantially perform. We dispatch with this argument by noting that Plaintiff testified he "had everything ready to go," and his "work was done all except the actual auction ... and delivering the sale bills." Moreover, he testified: "The actual auction itself is not the biggest deal. You have more hours spent prior to." He also testified as to the details of his preparatory work. The trial court was free to believe this evidence. *Sanders,* 42 S.W.3d at 8. There was sufficient evidence to support a finding that Plaintiff substantially performed before Defendant attempted to rescind the offer; consequently, Defendant was not entitled to revoke the offer. *Cook,* 967 S.W.2d at 657[9]. Point II is denied.

In this record, we find substantial evidence to support the trial court's judgment that Defendant breached a unilateral contract with Plaintiff. The judgment of the trial court is affirmed.

PARRISH, J., dissents in separate opinion.

RAHMEYER, C.J.–P.J., concurs.

JOHN E. PARRISH, Judge, dissenting.

I respectfully dissent. In my opinion it is questionable that the record supports the determination that there was a mutual understanding that Ketcherside (plaintiff) was to conduct an auction for McLane (defendant) and that defendant was to compensate plaintiff for so doing. *See Commercial Lithographing Co. v. Family Media, Inc.,* 695 S.W.2d 936, 939 (Mo.App. 1985). Regardless, I do not think the rec-

ord supports the finding that plaintiff substantially performed the task he contends had been agreed upon. Substantial performance is required in order to be entitled to compensation by reason of a unilateral contract. *See Cook v. Coldwell Banker,* 967 S.W.2d 654, 657 (Mo.App. 1998).

In order to have an auction, a date must be established. This was not done. Plaintiff contends this was to occur "once we had the sale bill completed"; that a date "desirable for all parties involved" would be set. On July 13, 2000, a recorded message was left for plaintiff telling him that defendant was going to have another auctioneer sell the property in question. No sale bill, written bid, or other writing memorializing any agreement between the parties had been presented to defendant by that date. This was a mere 18 days before the building containing the property to be sold was to be occupied by a new tenant. Defendant should not have been expected to wait for a longer time for arrangements for her auction to be finalized. If there was a mutual understanding between plaintiff and defendant, plaintiff did too little too late to be considered as having substantially performed the obligation he represents he had agreed to perform. There was not substantial evidence that would support the judgment. I would reverse the judgment.