**Amy WARREN, Respondent,**

**v.**

**TRIBUNE BROADCASTING COMPANY, LLC, et al., Appellants.**

**WD 79728**

Missouri Court of Appeals, Western District.

Filed: March 14, 2017

Elaine D. Koch, Timothy J. Davis, KCMO for appellants.

Stephen C. Thornberry, Randall W. Brown, KCMO for respondent.

Before Division Two: Cynthia L. Martin, Presiding Judge, Lisa White Hardwick and Alok Ahuja, Judges

Lisa White Hardwick, Judge

Tribune Broadcasting Company, LLC, and Tribune Broadcasting Kansas City, Inc. (collectively, "Tribune"), appeal from a judgment awarding Amy Warren actual damages for breach of contract. Tribune contends the circuit court erred in denying their motion for judgment notwithstanding the verdict because there was insufficient evidence that a contract was formed or breached and because the statute of frauds barred Warren's claim. For reasons explained herein, we affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

Tribune Broadcasting Company, LLC, owns Tribune Broadcasting Kansas City, Inc., which owns and operates WDAF Fox 4 TV ("WDAF"). In August 2012, WDAF's general manager, Cheryl McDonald, interviewed Warren about becoming WDAF's general sales manager. Warren had been a general sales manager for other television stations around the country since 2001 and had just resigned from that position at another Kansas City station.

After the interview, McDonald called Warren and offered her the job. During this phone call, McDonald told Warren that her starting salary would be $202,000 per year and that, in addition to her salary, her compensation would include an annual bonus. McDonald explained to Warren that, if her department "made budget" and "delivered the revenue plan," then Warren, as general sales manager, would receive a $5000 bonus. Also, McDonald told Warren that there was an opportunity for her to receive an additional bonus for exceeding 101% of the revenue goal. McDonald told Warren to contact Thermal

Stewart, WDAF's vice president of finance, to obtain more details about the annual bonus plan.

After speaking to McDonald, Warren called Stewart. Stewart confirmed the existence of the annual bonus plan and told Warren that, once the 101% of revenue goal was triggered, there was a "formula" that determined the sales manager's bonus. Based upon her conversations with McDonald and Stewart, Warren expected to receive this annual revenue-based bonus, calculated pursuant to the formula, if she met the company's revenue goal.

Warren accepted McDonald's job offer and began work on August 13, 2012. For the remainder of 2012 that Warren worked at WDAF, the revenue goal was not met, so there was no revenue-based bonus for 2012. Nevertheless, in early January 2013, Tribune's chief financial officer ("CFO") sent McDonald an email notifying her that they were going to give her a sales manager bonus pool of $41,500 to allocate at her discretion among the sales managers. Of the $41,500, McDonald gave Warren $12,000. In the same email, the CFO sent McDonald a document outlining the 2013 revenue-based bonus plan formula for the general manager, department heads and station positions, and sales management positions. This plan provided that Warren's 2013 bonus would be 20% of her annual base salary at 101% of gross station revenue budget, plus 4% of every net dollar over 101% of gross station revenue budget.

In 2013, the revenue goal was met and exceeded by early September 2013. Pursuant to the formula outlined in the CFO's January 2013 email, McDonald calculated Warren's bonus for 2013 to be $170,000. Warren was paid a bonus of only $136,000, however.

McDonald explained her decision to cut Warren's bonus in a series of emails with Tribune's chief operating officer ("COO") in early January 2014, before the bonuses were distributed. Specifically, McDonald told the COO that she had "already laid out the Sales bonuses" according to the CFO's bonus calculations, but that she did not want to "send [Warren] a strong message of approval by giving this huge bonus, knowing we have these HR issues." McDonald also said that she was "concerned that [Warren] will get the huge check and interpret it as being a great sales manager." McDonald reiterated that "[w]e have decided to 'ding' [Warren]'s bonus and tell her why it was 'dinged' . . . and then if there are any more issues that we have already addressed, she will be told that will lead to termination." McDonald told the COO that she was going to "discount" Warren's bonus by 20%, which was $34,000. McDonald prepared a document showing the 2013 bonuses that she was planning to give her staff. The document listed Warren's bonus as $136,164. Beside this number was the notation, "Reduced from $170 to 136 due to performance issues (20%)."

Three months later, McDonald terminated Warren's employment in March 2014. Warren subsequently filed a petition alleging eight claims against Tribune. After Warren voluntarily dismissed five of her claims, a jury trial was held on her three remaining claims of age discrimination, gender discrimination, and breach of contract regarding her 2013 bonus.

The jury found against Warren on her age and gender discrimination claims but returned a verdict in her favor on her breach of contract claim. The jury awarded her $34,000 in compensatory damages. Following trial, Tribune moved for judgment notwithstanding the verdict. The court denied their motion and entered judgment in accordance with the jury's verdict. Tribune appeals.

### STANDARD OF REVIEW

In both of their points on appeal, Tribune alleges the circuit court erred in denying their motion for judgment notwithstanding the verdict. When reviewing the denial of a motion for JNOV, we must determine whether the plaintiff made a submissible case by offering evidence to support every element of her claim. *Spalding v. Stewart Title Guar. Co.*, 463 S.W.3d 770, 778 (Mo. banc 2015). To do so, we view the evidence in the light most favorable to the jury's verdict, giving the plaintiff all reasonable inferences from the evidence and disregarding all contrary evidence and inferences. *Id.* We " 'will reverse the jury's verdict for insufficient evidence only where there is a complete absence of probative fact to support the jury's conclusion.' " *Id.* (citation omitted).

### ANALYSIS

In Point I, Tribune contends the court erred in denying their motion for JNOV because there was insufficient evidence to support Warren's breach of contract claim regarding her 2013 bonus. To recover on her breach of contract claim, Warren had to prove "(1) the existence of a valid contract; (2) the rights and obligations of each party; (3) a breach; and (4) damages." *Best Buy Builders, Inc. v. Siegel*, 409 S.W.3d 562, 564 (Mo. App. 2013). Tribune argues that Warren failed to prove the existence of a valid contract. Alternatively, Tribune asserts that, even if there was a valid contract, Warren did not prove a breach and resulting damages.

Looking first at the whether there was a contract between Warren and Tribune regarding her 2013 bonus, the essential elements of a contract are: " '(1) competency of the parties to contract; (2) subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation.' " *Ketcherside v. McLane*, 118 S.W.3d 631, 635 (Mo. App. 2003) (footnote and citation omitted). Tribune argues that Warren failed to establish the fourth element, which requires the parties to have a "mutuality of assent or a meeting of the minds to the essential terms of a contract." *Id.*

Courts determine whether there was a meeting of the minds by looking to the parties' intentions " 'as expressed or manifested in their words or acts.' " *Smith v. Hammons*, 63 S.W.3d 320, 325 (Mo. App. 2002) (citation omitted). The contract's essential terms must be certain or capable of being made certain. *Ketcherside*, 118 S.W.3d at 636. " 'That is, [the] terms of agreement must be sufficiently definite to enable the court to give it an exact meaning.' " *Id.* (citation omitted).

No contract is formed when the essential terms of the agreement are unduly uncertain and indefinite. *Around the World Importing, Inc. v. Mercantile Trust Co.*, 795 S.W.2d 85, 90 (Mo. App. 1990). Uncertainty and indefiniteness are matters of degree, however. *Bldg. Erection Servs. Co. v. Plastic Sales & Mfg. Co.*, 163 S.W.3d 472, 477 (Mo. App. 2005). While a contract's essential terms must be sufficiently definite, the "details or particulars" of the contract need not be. *Olson v. Curators of Univ. of Mo.*, 381 S.W.3d 406, 412 (Mo. App. 2012). " 'What is essential depends on the agreement and its context and also on the subsequent conduct of the parties, including the dispute which arises and the remedy sought.' " *Id.* (citation omitted). In determining whether the terms of an agreement are too uncertain to create an enforceable contract, "a court is guided by principles of law applied with 'common sense and in the light of experience.' " *Ketcherside*, 118 S.W.3d at 636 (citation omitted). A contract " 'should not be held

void for uncertainty if there is a possibility of giving meaning to the agreement.'" *Branson Land Co. v. Guilliams*, 926 S.W.2d 524, 526 (Mo. App. 1996) (citation omitted).

The evidence in the light most favorable to the jury's verdict was that, in an oral contract, Tribune, through McDonald and Stewart, offered an annual revenue-based bonus to Warren. The terms of this annual revenue-based bonus were that, if the sales department exceeded 101% of the revenue goal for that year, then Warren would receive a bonus that was determined by the formula that Tribune used to calculate bonuses.

The parties' subsequent conduct confirmed their assent to these terms. The sales department did not exceed 101% of the revenue goal in 2012; thus, Tribune did not pay Warren a revenue-based bonus for that year. Tribune did give Warren a bonus for 2012, however, that bonus was not calculated pursuant the revenue-based bonus formula but was simply allocated at McDonald's discretion from a "sales manager bonus pool" that Tribune had directed her to distribute. In 2013, the sales department did exceed 101% of the revenue goal. Using Tribune's revenue-based bonus formula as outlined in the CFO's January 2013 email, McDonald calculated Warren's 2013 revenue-based bonus to be $170,000. That Tribune calculated a revenue-based bonus for Warren using its formula after the sales department exceeded 101% of the revenue goal in 2013 indicated

Tribune's mutual agreement to pay Warren a revenue-based bonus, calculated pursuant to its formula, if the revenue goal was exceeded.[1]

■ Tribune argues that, because the formula was not discussed in detail at the time the oral contract was made, the terms of the contract were too indefinite to be enforceable and, in essence, constituted an "agreement to agree." Although Tribune did not disclose the details and particulars of the formula to Warren at the time the contract was made, both Tribune and Warren agreed that Tribune's formula would be used to calculate her annual revenue-based bonus if the sales department exceeded the revenue goal. Warren had 11 years of experience as a television station sales manager. The jury could have reasonably inferred that, based upon her experience in the industry, she was familiar with formulas used to calculate revenue-based bonuses and, therefore, did not need to know the details and particulars of Tribune's formula before agreeing to accept a bonus calculated pursuant to that formula. Thus, the essential term of the contract— *how* the revenue-based bonus would be calculated—was not reserved for future determination but was expressly agreed upon to be Tribune's formula. *Cf. Fedynich v. Massood*, 342 S.W.3d 887, 891-92 (Mo. App. 2011) (stating that, if a contract's essential terms are reserved for future determination, there is no valid agreement). Moreover, Tribune's formula was

1. Tribune argues that the CFO's January 2013 email outlining the formula "was nothing more than a unilateral statement ... about how they *might* conduct business in 2014 when determining the 2013 bonuses" and did not amount to a contractual offer. Tribune also argues that, because the January 2013 email was never conveyed to Warren, the email could not constitute an offer to enter into a contract with Tribune. We agree with Tribune that the January 2013 email was not

an offer. The offer was made several months earlier, when McDonald and Stewart told Warren that she would receive a revenue-based bonus calculated pursuant to Tribune's formula if the sales department exceeded its revenue goal. The January 2013 email was merely setting forth the details and particulars of the formula that the parties had already agreed to use. It is immaterial that the email was never conveyed to Warren.

capable of being made certain, as evidenced by the CFO's January 2013 email outlining the formula and McDonald's January 2014 document stating that she used the formula to calculate the staff's bonuses. Because it was possible to give exact meaning to Warren's and Tribune's agreement that Warren would receive a revenue-based bonus pursuant to Tribune's formula if the department exceeded the revenue goal, these terms were sufficiently certain to create an enforceable contract.

Tribune next contends that, even if there was sufficient evidence that an oral contract to pay Warren a revenue-based bonus was formed, there was no evidence that Tribune breached the contract. Tribune argues that, because they paid Warren a bonus of $133,000 in 2013, Warren could not demonstrate that they breached the contract or that she suffered damages as a result of a breach. We disagree.

█ The contract provided for Tribune to pay Warren an annual revenue-based bonus calculated pursuant to Tribune's formula. The jury could have reasonably understood that Tribune's formula was an objective calculation based on quantitative production and not on other performance-related issues. There was no evidence that this objectively-calculated amount would be subject to diminution at the discretion of a superior. Although Tribune argued to the jury that it had such discretion, the jury rejected this argument. We defer to its decision to do so. *Spalding*, 463 S.W.3d at 778. There was sufficient evidence to support the jury's finding that Warren and Tribune had an oral contract requiring Tribune to pay Warren a revenue-based bonus calculated pursuant to Tribune's formula and that Tribune breached this contract by paying her only $136,000 instead of $170,000, the calculated amount. The court properly denied Tribune's motion for JNOV on this basis. Point I is denied.

In Point II, Tribune contends that the circuit court erred in denying their motion for a JNOV because the statute of frauds barred Warren's breach of contract claim. Specifically, Tribune argues that the statute of frauds barred Warren's claim because the bonus contract could not have been performed within a year of its formation.

The statute of frauds provides, in pertinent part:

No action shall be brought ... to charge any person ... upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith[.]

§ 432.010, RSMo 2000. Tribune asserts that, because their revenue-based bonus contract with Warren began on August 13, 2012, and her 2013 bonus could not have been paid out until 2014, the contract to pay her a revenue-based bonus in 2013 could not possibly have been performed within one year from its making and, therefore, was unenforceable under the statute of frauds.

█ "[A] contract is not unenforceable under the statute of frauds if it could possibly be performed in compliance with its terms within one year, even though the actual performance is expected to continue over a much longer period." *Crabb v. Mid-Am. Dairymen, Inc.*, 735 S.W.2d 714, 716 (Mo. banc 1987). "Thus an oral contract to work for a person for two years would violate the statute, but a parol undertaking to hire a man 30 years old for the rest of his life would not." *Id.*

Tribune's oral agreement to pay Warren an annual revenue-based bonus is very similar to the oral agreement in *Murphy v.*

*Buschman-Jennings, Inc.*, 382 S.W.2d 29 (Mo. App. 1964). In *Murphy*, the plaintiffs were insurance agents who sued their employer for breach of contract after the defendant failed to pay them an annual bonus pursuant to an oral agreement. *Id.* at 30. The plaintiffs had worked for the defendant for several years before entering into the agreement, which provided that, beginning in 1958, the plaintiffs would receive a bonus equal to 15% of all profits over sales of $5000 for the year. *Id.* The agreement was to last indefinitely. *Id.* at 31. The plaintiffs met the goal but were not paid the bonus for 1958. *Id.* at 30. After the circuit court ruled in favor of the plaintiffs, the defendant appealed, claiming that the oral agreement was unenforceable under the statute of frauds because it was to last "indefinitely." *Id.* at 33. On appeal, the court rejected this argument, holding:

> The defendant misconstrues the nature of the agreement and the requirements of the Statute of Frauds. The oral agreement sued upon was that they were to receive from defendants a bonus commission equal to fifteen per cent of the profits which the defendants earned from their endeavors provided such profits exceeded the sum of $5,000.00. The entire sense of the agreement was that this commission was to be figured on a yearly basis. It is well recognized that that provision of the Statute of Frauds requiring an oral agreement which may be performed within a year from its date is not within the Statute of Frauds, although performance is liable to occupy more than a year. This agreement is not unenforceable due to the provision of the Statute of Frauds upon which defendant relies.

*Id.* (internal citations omitted).

Here, as in *Murphy*, the "entire sense of the agreement" was that Tribune was to pay Warren an annual revenue-based bonus for every calendar year in which the sales department exceeded the revenue goal. Nevertheless, the contract could have been fully performed within one year. If the sales department had exceeded the revenue goal for 2012, then Warren would have been entitled to a 2012 revenue-based bonus at the beginning of 2013—within one year after the revenue-based bonus contract was made in August 2012. Even though actual performance was "liable to occupy more than a year," *id.* because the oral contract for Warren's annual revenue-based bonus "could possibly [have been] performed in compliance with its terms within one year," the statute of frauds did not bar its enforcement. *Crabb*, 735 S.W.2d at 716. The court properly denied Tribune's motion for a JNOV on this basis. Point II is denied.

## CONCLUSION

The judgment is affirmed.

All Concur.