**Mary Ellen COOK, Plaintiff/Respondent,**

v.

**COLDWELL BANKER/FRANK LAIBEN REALTY CO., Defendant/Appellant.**

No. 72243.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 31, 1998.

Rehearing Denied May 27, 1998.

Clinton B. Roberts, Roberts, Roberts & Burcham, L.L.C., Farmington, for defendant/appellant.

William C. Dodson, Kevin C. Roberts, Dodson, Breeze, Kister, Roberts & Millan, L.C., Festus, for plaintiff/respondent.

CRANE, Presiding Judge.

Defendant real estate brokerage firm appeals from a judgment entered on a jury verdict awarding defendant's former salesperson $24,748.89 as damages for breach of a

bonus agreement. Defendant claims that the salesperson failed to make a submissible case in that she did not accept the bonus offer before it was revoked. Defendant also asserts trial court errors relating to instructions, evidence, and closing argument. We affirm.

Plaintiff, Mary Ellen Cook, a licensed real estate agent, worked as a real estate salesperson or agent pursuant to a verbal agreement for defendant Coldwell Banker/Frank Laiben Realty Co. and its predecessors. Plaintiff listed and sold real estate for defendant as an independent contractor. Frank Laiben was a co-owner of defendant.

At a sales meeting in March, 1991, defendant, through Laiben, orally announced a bonus program in order to remain competitive with other local brokerage firms and to retain its agents. The bonus program provided that an agent earning $15,000.00 in commissions would receive a $500.00 bonus payable immediately, an agent earning $15,000.00 to $25,000.00 in commissions would receive a twenty-two percent bonus, and an agent earning above $25,000.00 in commissions would receive a thirty percent bonus. Bonuses over the first $500.00 were to be paid at the end of the year. The first year of the program would be January 1, 1991 to December 31, 1991 and it would continue on an annual basis after that. Laiben kept track of the agents' earnings in a separate bonus account.

At the end of April, 1991, plaintiff surpassed $15,000.00 in earnings, entitling her to a $500.00 bonus which defendant paid to her in September, 1991. By September, 1991 plaintiff surpassed $32,400.00 in commissions.

At another sales meeting in September, 1991, Laiben indicated that bonuses would be paid at a banquet to be held in March of the following year instead of at the end of the year. Plaintiff asked if that meant that an agent had to be "here" in March in order to collect the bonus. Laiben indicated that was what it meant. Plaintiff testified that, at the time of the change in the bonus agreement, she had no intention of leaving defendant, but stayed with defendant until the end of 1991 in reliance on the promise of a bonus.

During 1991 plaintiff was contacted about joining Remax, another real estate brokerage firm. Although she was not initially interested, in January, 1992 she accepted a position with Remax and advised Laiben of her departure. Laiben informed her that she would not be receiving her bonus. At the end of 1991, plaintiff had total earnings of $75,638.47, which made her eligible for a combined bonus of $17,391.54. After placing her license with Remax, plaintiff finished closing four or five contracts that she had been working on prior to leaving defendant. In March, 1992 plaintiff sent a demand letter to defendant, seeking payment for the bonus she believed she had earned. Defendant did not pay plaintiff.

On December 17, 1992 plaintiff filed an action against defendant for breach of a bonus contract, seeking damages in the amount of $18,404.31. She amended this petition to include prejudgment interest. At trial Laiben denied that at the March meeting he had stated the bonuses would be paid at the end of the year and testified that at that meeting he had told the agents the bonuses would not be paid until the following March. The jury returned a verdict in favor of plaintiff and awarded her damages in the amount of $24,748.89. The court entered judgment in this amount.

In its first point defendant contends that the trial court erred in overruling its motions for directed verdict because plaintiff failed to make a submissible case of breach of the bonus agreement. In particular, defendant argues that plaintiff did not adduce sufficient evidence to establish a reasonable inference that 1) she tendered consideration to support defendant's offer of a bonus, or that 2) she accepted defendant's offer to give a bonus.

A directed verdict is a drastic action and should only be granted where reasonable and honest persons could not differ on a correct disposition of the case. *Seidel v. Gordon A. Gundaker Real Estate Co.*, 904 S.W.2d 357, 361 (Mo.App.1995). In determining whether a plaintiff has made a submissible case in a contract action, we view the evidence in a light most favorable to plaintiff, presume plaintiff's evidence is true, and give plaintiff the benefit of all reasonable

and favorable inferences to be drawn from the evidence. *Gateway Exteriors Inc. v. Suntide Homes Inc.*, 882 S.W.2d 275, 279 (Mo.App.1994).

Plaintiff adduced evidence of a unilateral contract offered in March, 1991 to pay a bonus under certain conditions at the end of the year. She also adduced evidence that in September, 1991 defendant attempted to revoke that offer and make the bonus contingent upon the agent's remaining until March of the following year.

▮▮ A unilateral contract is a contract in which performance is based on the wish, will, or pleasure of one of the parties. *Klamen v. Genuine Parts Co.*, 848 S.W.2d 38, 40 (Mo.App.1993). A promisor does not receive a promise as consideration for his or her promise in a unilateral contract. *Id.* A unilateral contract lacks consideration for want of mutuality, but when the promisee performs, consideration is supplied, and the contract is enforceable to the extent performed. *Leeson v. Etchison*, 650 S.W.2d 681, 684 (Mo. App.1983). An offer to make a unilateral contract is accepted when the requested performance is rendered. *Nilsson v. Cherokee Candy & Tobacco Co.*, 639 S.W.2d 226, 228 (Mo.App.1982). A promise to pay a bonus in return for an at-will employee's continued employment is an offer for a unilateral contract which becomes enforceable when accepted by the employee's performance. *Id.* at 228.

▮▮ In the absence of any contract to the contrary, plaintiff could terminate her relationship with defendant at any time and was not obligated to earn a certain level of commissions. There was sufficient evidence that the bonus offer induced plaintiff to remain with defendant through the end of 1991 and to earn a high level of commissions for the court to submit the issue of acceptance by performance to the jury.

Defendant next argues that it was free to revoke the first offer with the second offer because, as of the time the second offer was made, plaintiff had not yet accepted the first offer. Defendant maintains that, because plaintiff did not stay until March, 1992, she did not accept the second offer and thus, did not earn the bonus.

▮▮ Generally, an offeror may withdraw an offer at any time prior to acceptance unless the offer is supported by consideration. *Coffman Industries, Inc. v. Gorman–Taber Co.*, 521 S.W.2d 763, 772 (Mo.App. 1975). However, an offeror may not revoke an offer where the offeree has made substantial performance. *Id.* (citing 1WILLISTON ON CONTRACTS, Third Edition Section 60A (1957)). *Coffman* set out the general rule of law as follows:

> Where one party makes a promissory offer in such form that it can be accepted by the rendition of the performance that is requested in exchange, without any express return promise or notice of acceptance in words, the offeror is bound by a contract just as soon as the offeree has rendered a substantial part of that requested performance.

1 CORBIN ON CONTRACTS Section 49 (1952), quoted in *Coffman*, 521 S.W.2d at 772. The court stated the rationale for the rule as follows:

> The main offer includes a subsidiary promise, necessarily implied, that if part of the requested performance is given, the offeror will not revoke his offer, and that if tender is made it will be accepted. **Part performance** or tender may thus furnish consideration for the subsidiary promises. Moreover, merely acting in justifiable reliance on an offer may in some cases serve as sufficient reason for making a promise binding. (Emphasis supplied.)

RESTATEMENT [FIRST] OF CONTRACTS Section 45 cmt. b (1932), quoted in *Coffman*, 521 S.W.2d at 772. Thus, in the context of an offer for unilateral contract, the offer may not be revoked where the offeree has accepted the offer by substantial performance. *Id.* at 771–72.

In this case there was evidence that, before the offer was modified in September, 1991, plaintiff had remained with defendant and had earned over $32,400.00 in commissions, making her eligible for the offered bonus. This constitutes sufficient evidence of substantial performance.

Plaintiff adduced evidence that defendant offered to pay a bonus at the end of 1991 if she would continue to work for it, that she stayed through 1991 with an intent to accept the offer, that she sold and listed enough property to qualify for all three bonus levels, that defendant knew of plaintiff's performance, that defendant paid $500.00 of the bonus but did not pay the remainder, and that she was damaged. This evidence was sufficient to make a submissible case for breach of a unilateral contract. Point one is denied.

In its second point defendant asserts that the trial court erred in submitting Instruction No. 6, the verdict director, because 1) it failed to require the jury to find that there was sufficient consideration to support the agreement, 2) it used the word "he" in paragraph four and thus, the jury would have been thinking and directing its verdict towards Frank Laiben as opposed to the true defendant corporation, and 3) the term "performance" was not defined.

■■■ Only the first claim of error is preserved for review. The second ground was not raised at trial and therefore, review is precluded by Rule 70.03. *Seidel,* 904 S.W.2d at 364. Where the alleged error relating to an instruction differs from the objection made at trial, the error may not be reviewed on appeal. *Id.* The third ground was not addressed in the argument section of defendant's brief and thus, is not preserved for review. *Unlimited Equip. Lines v. Graphic Arts Centre Inc.,* 889 S.W.2d 926, 942 (Mo.App.1994).

■■■ Defendant claims that Instruction No. 6 improperly failed to submit whether there was sufficient consideration or any consideration to support the alleged agreement. Instruction No. 6 was based on M.A.I 26.01, "Verdict Directing–Breach of Unilateral Contract." It properly submitted that the jury must find performance with intent to accept the offer as an element for breach of a unilateral contract. A separate finding of consideration was not necessary. Point two is *denied.*

■■■ In its third point defendant contends that the trial court erred in instructing de-

fendant's counsel not to argue lack of consideration in its closing argument. Defendant's point does not state wherein or why this is error. Rule 84.04 requires that the points relied on state "wherein and why" the action of the court is claimed to be erroneous. *Jefferson v. Bick,* 872 S.W.2d 115, 118 (Mo.App. 1994). Failure to state wherein and why the court's action was erroneous leaves defendant's point unpreserved for review. *Id.*

■■■ Further there is no plain error. Defendant contends that it was entitled to argue that plaintiff did not give consideration to support a unilateral contract before the second sales meeting. In this case the jury was instructed to find that "[p]laintiff performed the acts called for in such offer with intent to accept such offer[.]" The court advised defendant's counsel:

> You can argue that she didn't do what was asked for and therefore she isn't entitled to recover. Certainly you can do that under the facts that have been presented. I'd just as soon you didn't use the word consideration. You can argue this without getting into consideration here because if the jury believes each and every one of the elements in the plaintiff's verdict director, the law presumes consideration, if those elements are present.

This ruling did not prevent defendant's counsel from arguing the facts and law relating to the elements contained in the verdict directing instruction. The trial court did not plainly err in not allowing counsel to argue lack of consideration, a legal concept not used or defined in the submitted jury instructions. Point three is denied.

For its fourth point defendant contends that the trial court erred in overruling its objection to plaintiff's closing argument and in improperly commenting on its argument. Again this point relied on fails to state wherein and why these actions were error and preserves nothing for review. *Jefferson,* 872 S.W.2d at 118. We have reviewed for plain error and find none.

Defendant complains about the following exchange during plaintiff's closing argument:

> **Plaintiff's Counsel:** Is it surprising that when she went in and told him that she

was quitting, she thought she was gonna [sic] have to fight to get her bonus? She had to fight for the first five hundred dollars, from April to September.

**Defendant's Counsel:** Objection, Judge. Outside the scope of the pleadings, no evidence to support that allegation.

**The Court:** There's a reasonable inference may be drawn by the jury.

■ The trial court did not err in overruling the objection. The evidence adduced at trial showed that 1) plaintiff had earned her $500.00 bonus in April, 1991, 2) according to defendant's bonus program, the $500.00 bonus was payable immediately upon earning $15,000.00 in commissions, and 3) she did not receive it until September, 1991. Counsel could suggest from these facts that plaintiff had to fight for her $500.00 bonus.

■ With respect to the court's own comment, defense counsel did not object or request a mistrial and therefore, did not preserve any error for review. Point four is denied.

In its fifth point defendant asserts that the trial court erred in excluding evidence of its earnings during the time in question because that evidence was admissible under the doctrine of curative admissibility. This error is not preserved for review because defendant did not urge that the evidence was admissible on the grounds of curative admissibility at trial or in its motion for new trial. On appeal a party may not advance an objection different from that stated at trial. *McHaffie v. Bunch*, 891 S.W.2d 822, 830 (Mo. banc 1995).

■ We have reviewed for plain error and find none. Defendant argues that the jury was misled at trial by Laiben's testimony, given in response to plaintiff's counsel's question, that defendant was making forty-three percent on all of its agents' sales. Defendant maintains that it should have been able to offer proof of its losses in order to cure the misperception that it was making a lot of money. Defendant was not entitled to the admission of this evidence under the doctrine of curative admissibility. The doctrine of curative admissibility permits a party to reply to inadmissible evidence introduced by an opposing party with similar evidence

where its introduction would cure any unfair prejudice created by the admission of the inadmissible evidence. *IMR Corp. v. Hemphill*, 926 S.W.2d 542, 545 (Mo.App.1996). The testimony relating to defendant's commission structure was relevant and not inadmissible. Point five is denied.

In its final point defendant contends that the trial court erred in sustaining plaintiff's objection to evidence regarding the nature and history of the bonus plan defendant selected. Defendant argues that this evidence was admissible under two theories: 1) custom and usage and 2) the doctrine of curative admissibility.

At trial defendant attempted to introduce evidence from its employee Carole Balmer, who was involved in formulating defendant's bonus plan, that she based defendant's bonus plan on those used by other brokerage firms and those plans provided that bonuses would be paid in March. The testimony was as follows:

**Defendant's Counsel:** And what did you do [in formulating this bonus plan]?

**Carole Balmer:** I had had the experience with living with bonus plans before. So I used the outline of the plans that I was familiar with to begin the formulation of our plan.

**Defendant's Counsel:** These plans that you used, when did they provide bonuses would be paid?

**Carole Balmer:** In March.

**Plaintiff's Counsel:** Judge, I'm going to object again on relevancy and ask that the answer be stricken.

**The Court:** Sustained and the answer will be stricken from the record.

Defendant's counsel argued that the testimony was relevant "as to the formulation of this plan and where they took it from. I think it's also relevant because it was to keep them competitive, that they adopt the same standard plan that was in St. Louis." The court explained, outside the hearing of the jury:

What their motivation was or what pattern they based it on is irrelevant. What is relevant here is what their plan as developed actually was and what portions of

that and in what manner was communicated to the plaintiff in this case. The reason they have selected that because it makes them competitive is really irrelevant. They could've selected another plan and made them even more competitive, it doesn't matter. It's irrelevant.

■ Defendant argues that custom and usage evidence is admissible to show the intent of the parties. However, defendant's intent to adopt a bonus plan comparable to those used in other brokerage firms was irrelevant because there was no contention that the contract was ambiguous. Rather, the contested issue was whether, at the March, 1991 meeting, defendant had said the bonus would be payable at the end of the year or the following March.

Defendant's claim of curative admissibility likewise has no merit. First, it was not raised in the trial court or in defendant's motion for new trial as a ground for admission and is thus not preserved for review. *McHaffie*, 891 S.W.2d at 830. Second, defendant does not point to any inadmissible evidence which would give rise to the use of the doctrine.

The trial court did not abuse its discretion in excluding the evidence of when other companies paid their bonuses. Point six is denied.

RHODES RUSSELL and JAMES R. DOWD, JJ., concur.