Anthony W. JENNINGS, Appellant,

v.

SSM HEALTH CARE ST. LOUIS, Respondent.

No. ED 96364.

Missouri Court of Appeals, Eastern District, Division One.

Dec. 20, 2011.

Kelley F. Farrell, Zofia A. Garlicka, Andrew D. Lamb, St. Louis, MO, for Appellant.

Kathi L. Chestnut, St. Louis, MO, for Respondent.

ROY L. RICHTER, Judge.

Dr. Anthony Jennings ("Dr. Jennings") brought suit against SSM Health Care St. Louis ("SSM") in the Circuit Court of St. Charles County. He appeals from the trial court's granting of SSM's motion to dismiss for failure to state a claim upon which relief can be granted. Dr. Jennings argues that his claims were sufficiently pled to survive SSM's motion to dismiss. We affirm in part, and reverse and remand in part.

## I. BACKGROUND

Dr. Anthony Jennings was hired in 2002 to serve as an emergency room physician at St. Joseph's Hospital West ("St. Joseph's"), an affiliate of SSM. In 2006, Dr. Jennings was promoted to medical director of Emergency Services at St. Joseph's, where he remained in that capacity until

2008. In the summer of 2008, SSM informed all of the Emergency Services physicians employed at St. Joseph's, including Dr. Jennings, that their positions were being outsourced to a third-party vendor. Dr. Jennings alleges that during that meeting, SSM promised severance to all of those physicians in attendance in exchange for their continued employment at St. Joseph's during the transition period. Dr. Jennings remained employed with SSM throughout the transition period until December 2008, at which point he was terminated. He received no severance payment.

On July 27, 2010, Dr. Jennings filed suit against SSM. In his seven-count petition, each count pled in the alternative, Dr. Jennings alleged: (1) a breach of his employment agreement; (2) a breach of SSM's written severance policy; (3) a breach of a unilateral verbal severance contract; (4) promissory estoppel; (5) unjust enrichment; (6) fraudulent misrepresentation; and (7) negligent misrepresentation.

Following the filing of Dr. Jennings's petition, SSM filed a motion to dismiss all counts for failure to state a claim upon which relief could be granted. After a hearing, the trial court sustained SSM's motion to dismiss, without stating any specific ground upon which the dismissal was based, and dismissed the petition without designating the dismissal as with or without prejudice. This appeal follows.

## II. DISCUSSION

■ The law generally favors trial on the merits. *Summer Chase Second Addition Subdivision Homeowners Ass'n v. Taylor–Morley, Inc.*, 146 S.W.3d 411, 414–15 (Mo.App. E.D.2004). Appellate review of a trial court's grant of a motion to dismiss is *de novo*. *Thomas v. A.G. Elec., Inc.*, 304 S.W.3d 179, 182 (Mo.App. E.D.

2009). "A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition." *Nazeri v. Mo. Valley College*, 860 S.W.2d 303, 306 (Mo. banc 1993). When the trial court fails to state a basis for its dismissal, we presume it was based on at least one of the grounds stated in the motion to dismiss. *Summer Chase*, 146 S.W.3d at 415. In our review, we assume that all of the plaintiff's averments are true, and liberally grant the plaintiff all reasonable inferences. *Nazeri*, 860 S.W.2d at 306. We do not attempt to weigh the credibility or persuasiveness of any of the alleged facts. *Id.* Instead, we review the petition, allowing the broadest intendment, "in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case." *Id.*; *Thomas*, 304 S.W.3d at 183.

■ Dr. Jennings raises five points on appeal. Before reaching those points, however, we must first consider, *sua sponte*, whether the dismissal order is a final judgment from which Dr. Jennings may appeal. We evaluate "whether a judgment is final for purposes of appeal, and if the appeal is found to be premature, it must be dismissed." *Blechle v. Goodyear Tire & Rubber Co.*, 28 S.W.3d 484, 486 (Mo.App. E.D.2000). The general rule is that "[a] dismissal failing to indicate that it is with prejudice is deemed to be without prejudice." *Atkins v. Jester*, 309 S.W.3d 418, 422–23 (Mo.App. S.D.2010) (citing Rule 67.03) (internal quotations omitted). Here, the trial court dismissed Dr. Jennings's petition without indicating whether the dismissal was with or without prejudice. Thus, the dismissal was without prejudice.

■ Normally, a dismissal without prejudice is not a final judgment and, therefore, is not appealable. *Chromalloy*

*Am. Corp. v. Elyria Foundry Co.,* 955 S.W.2d 1, 3 (Mo. banc 1997). However, there are exceptions to this rule. When a dismissal without prejudice operates to preclude a party from bringing another action for the same cause and becomes *res judicata* of what the judgment actually decided, then an appeal may be taken. *Id.* Likewise, when the dismissal has the "practical effect of terminating the litigation in the form cast or in the plaintiff's chosen forum," then an appeal may be taken. *Id.* In instances like the present case, where the trial court dismisses a petition without prejudice for failure to state a claim, and the plaintiff elects to stand on the dismissed petition and not to plead further, then that dismissal effectively bars the plaintiff from re-filing the action in its original form. *Bachman v. Bachman,* 997 S.W.2d 23, 25 (Mo.App. E.D.1999); *Mahoney v. Doerhoff Surgical Services, Inc.,* 807 S.W.2d 503, 506 (Mo. banc 1991). We therefore may take this appeal.

### A. Dr. Jennings's Breach of Contract Claims

Dr. Jennings's petition advanced three separate claims for breach of contract, each pled in the alternative. Count I alleged a breach of his employment agreement. Count II alleged a breach of SSM's written severance policy. Count III alleged a breach of a verbal severance agreement. On appeal, however, he has combined these three counts into one point. We will evaluate each claim in turn.

#### 1. Breach of Employment Agreement

Count I of Dr. Jennings's petition alleged that SSM breached Dr. Jennings's employment agreement by not pay-ing him severance in accordance with SSM's corporate severance policy. In order to succeed on a breach of contract claim, the plaintiff must demonstrate the following necessary elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff. *Keveney v. Mo. Military Acad.,* 304 S.W.3d 98, 104 (Mo. banc 2010). Dr. Jennings argues the trial court erred in granting SSM's motion to dismiss because the severance policy was duly incorporated into his employment agreement when SSM made its oral promise to pay severance. We disagree.

Count I of the petition averred: (1) the severance policy, which was an approved published policy of SSM, was duly incorporated into the employment agreement; (2) Dr. Jennings performed his obligations under the employment agreement; (3) the employment agreement contained an implied covenant of good faith and fair dealing which forbade SSM from evading its obligations under the agreement and its attendant policies and procedures; (4) SSM breached the agreement by not paying Dr. Jennings any severance, and (5) Dr. Jennings suffered damages as a result of that breach.

SSM argued in its motion to dismiss that Count I failed to state a claim upon which relief could be granted because the employment agreement included an integration clause. That integration clause, SSM contended, effectively sealed the contract at the time of its signing and constituted the entire agreement of the parties.[1] We agree.

---

1. In support of its argument, SSM directed the trial court to our finding in *Milton v. SSM Health Care St. Louis,* 294 S.W.3d 92 (Mo. App. E.D.2009). In *Milton,* this Court issued a written order and supporting memorandum pursuant to Rule 84.16(b) affirming the trial court's dismissal of the breach of contract claims brought by a group of physicians

A written contract is presumed to be "the final memorial of the parties' agreement and an integration clause further confirms the all-inclusive nature of the document." *RLI Ins. Co. v. Southern Union Co.*, 341 S.W.3d 821, 830 (Mo.App. W.D.2011). As a result, the "law conclusively presumes all prior and contemporaneous agreements have been merged into a written contract," particularly when the contract contains an integration clause. *Clean Uniform Co. St. Louis v. Magic Touch Cleaning, Inc.*, 300 S.W.3d 602, 611 (Mo.App. E.D.2009) (internal quotations omitted). Here, Dr. Jennings's employment agreement included an integration clause which stated, in relevant part:

> This Agreement constitutes the entire agreement between Hospital and Physician and supersedes all prior proposals, negotiations, representations, communications, writings and agreements between Hospital and Physician with respect to the subject matter hereof, whether oral or written.

In response, Dr. Jennings argues against the efficacy of the integration clause by asserting to this Court that Count I actually alleged the severance agreement was incorporated due to SSM's oral promise to provide severance. He advances this argument on the basis that, despite the clear language of Count I, he incorporated by reference the entire factual background of his petition, including his averments concerning the alleged oral promise. We find this specious argument unsupported by the petition.

Incorporation by reference pursuant to Rule 55.12 is a useful tool in avoiding repetition in a pleading. *Hester v. Bar-*

*nett,* 723 S.W.2d 544, 561 (Mo.App.W.D. 1987). However, adoption by reference "does not dispel the requirements that the pleading—as enhanced by the reference adopted—be simple, concise, and direct." *Id.* (quoting Rule 55.04) (internal quotation omitted). The pleading is still required to "present, define and isolate controverted issues as to advise the trial court and the parties of the issues to be tried and to expedite the trial of the cause on the merits." *Id.* (quoting *Pillow v. General Amer. Life Ins., Co.*, 564 S.W.2d 276, 280 (Mo. App. E.D.1978)). It would be incongruous with the time-saving intent of incorporation by reference to allow the pleader to overcome a clearly defined, yet insufficient claim, by requiring the court to engage in speculation and propose alternate theories that could be derived from the incorporated portions of the pleading.

Here, the unmistakable thrust of Count I was that SSM's severance policy was incorporated into Dr. Jennings's employment agreement because, at the time of contracting, the severance policy was "an approved and published policy of SSM." Dr. Jennings laid the groundwork for this claim when he averred that, since the employment agreement required Dr. Jennings to "follow all established policies and procedures" of SSM, it necessarily followed that SSM was obligated to "follow its own policies, practices and procedures." Additionally, Count I averred that the employment agreement contained an implied covenant of good faith and fair dealing which forbade SSM from "depriving Plaintiff of his rights and expected benefits under the Employment Agreement and [its] attendant policies and procedures." Thus, when SSM did not pay severance,

---

against SSM. The supporting memorandum setting out the basis for our decision *"shall not* constitute a formal opinion of the court, *shall not* be reported, and *shall not* be cited or otherwise used in any case before any

court." Rule 84.16(b) (emphasis added). Despite SSM's insistence that the instant case shares similarities to *Milton,* the language of the rule is unambiguous. The *Milton* decision will not be considered.

Plaintiff averred that constituted a breach of the employment agreement, "including the covenant of good faith and fair dealing."

Count I of Dr. Jennings's petition clearly concerned the applicability of SSM's severance policy to Dr. Jennings's employment agreement at the time of contracting. By its terms, however, Dr. Jennings's employment agreement does not provide for severance or incorporate the independent SSM severance policy. Thus, absent any such contractual proviso, we conclude that Dr. Jennings's employment agreement encompassed the entire agreement between the parties.

Accordingly, Dr. Jennings did not state a claim upon which relief can be granted and the trial court did not err in dismissing Count I of Dr. Jennings's petition.

### 2. Breach of Unilateral Written Severance Contract

 Count II of Dr. Jennings's petition alleged that SSM breached a unilateral written severance contract when no severance was paid. Specifically, the petition averred: (1) SSM's severance policy constituted a general written offer to SSM employees; (2) upon acceptance by the employee, the severance policy became part of the employment contract of each employee; (3) SSM informed Dr. Jennings of this offer by disseminating the severance policy and procedures to him; (4) Dr. Jennings accepted the offer by remaining employed through the transition period; (5) Dr. Jennings's decision to remain employed constituted consideration, making the unilateral contract enforceable; and (6) SSM breached the contract by not paying severance.

 A unilateral contract is a contract in which "performance is based on the wish, will, or pleasure of one of the parties." *Cook v. Coldwell Banker,* 967

S.W.2d 654, 657 (Mo.App. E.D.1998). A promisor does not receive a promise as consideration for his or her promise in a unilateral contract. *Id.* Despite this lack of mutuality, when the promisee performs, consideration is supplied, and the contract is enforceable to the extent performed. *Id.* An offer to make a unilateral contract is accepted when the requested performance is rendered. *Id.* In general, for an acceptance to be effective, it "must be positive and unambiguous." *Kunzie v. Jack–in–The–Box, Inc.,* 330 S.W.3d 476, 484 (Mo.App. E.D.2010) (quoting 2 *Williston on Contracts* § 6.10 (4th ed.2007)).

SSM advanced two theories for why Count II of the petition failed to state a claim. First, SSM argued that the act of publishing a general severance policy was not an offer. In support, SSM directed the trial court's attention to *Johnson v. McDonnell Douglas Corp.,* 745 S.W.2d 661 (Mo. banc 1988). In *Johnson,* the Missouri Supreme Court was faced with an at-will employee's wrongful termination claim. The crux of the employee's claim was that the employer created an employment contract between the parties when it published an employee handbook. *Id.* at 661–62. The Supreme Court disagreed.

> McDonnell's unilateral act of publishing its handbook was not a contractual offer to its employees. The handbook was merely an informational statement of McDonnell's self-imposed policies.... Several of the rules and regulations in the handbook were couched in general terms and were open to broad discretion and interpretation. The handbook also provided that the rules were subject to change at any time. Given the general language of the handbook and the employer's reservation of power to alter the handbook, a reasonable at will employee could not interpret its distribution as an offer to modify his at will status. ....

Since McDonnell Douglas made no offer to its employees, no power of acceptance was created in the plaintiff.

*Id.* at 662–63 (citations omitted).

We find that *Johnson* is controlling here. By publishing a severance policy as a part of its general corporate policies and procedures, SSM did not make a contractual offer. SSM's severance policy simply explained the opportunity for severance was available to qualified employees. Consequently, Dr. Jennings had no power of acceptance.

Our finding against Dr. Jennings on Count II is further bolstered by the terms of the severance policy. First, the severance policy explicitly reserved for SSM the right to change the policy and make exceptions to its provisions. This is akin to *Johnson,* where the Supreme Court found such exceptions clauses, which preserve for the employer a degree of discretion or power to modify, to be important indicators that a particular policy or manual is not a contractual offer. *Id.* at 662; *see also West Cent. Mo. Regional Lodge No. 50 v. Bd. of Police Comm'rs of Kansas City,* 939 S.W.2d 565, 567–68 (Mo.App. W.D.1997) (finding that an employee manual was not a contractual offer, in part, because a clause vested the employer with discretion).

Second, SSM's severance policy cannot be characterized as a certain obligation on the part of SSM. In order for a contract to be both valid and enforceable, the "nature and extent of its obligations must be certain." *West Cent. Mo. Regional Lodge No. 50,* 939 S.W.2d at 568 (quoting *Around the World Importing, Inc. v. Mercantile Trust Co., N.A.,* 795 S.W.2d 85, 90 (Mo.App. E.D. 1990)). Such certainty is absent here.

SSM's severance policy provides that those employees who fall under the purview of the policy "will be *eligible* for severance pay." *See id.* (emphasis added). When viewed in conjunction with SSM's preserved discretion to make exceptions and modify the severance policy, it is clear that the policy offers an employee nothing more than the possibility of severance. Instead of a contractual offer, it is best characterized as an informational statement regarding a self-imposed policy.

Accordingly, Dr. Jennings failed to state a claim upon which relief could be granted and the trial court properly dismissed Count II of Dr. Jennings's petition.[2]

### 3. Breach of Unilateral Oral Contract

In Count III of Dr. Jennings's petition, he alleged that SSM breached its unilateral oral contract with him when he was not paid severance. Specifically, Dr. Jennings averred: (1) SSM held various meetings with Dr. Jennings and other physicians and, during those meetings, SSM promised to pay severance if he remained employed through the transition period; (2) the severance offer did not have any exceptions or qualifications; (3) Dr. Jennings accepted this offer by rendering the requested performance; (4) Dr. Jennings's performance amounted to consideration and an enforceable unilateral contract was formed; and (5) SSM did not pay severance, thus breaching the contract and damaging Dr. Jennings.

In response, SSM argued in its motion to dismiss that Count III failed to state a claim because the employment agreement contained an integration clause that disallowed oral modification. The clause provided that the employment agreement "may only be amended or modified by a

---

**2.** Because we find SSM's first argument dispositive of Count II, we need not address the merits of SSM's second contention.

subsequent written agreement between duly authorized representatives of Hospital and Physician." SSM's argument is without merit.

■ Missouri law is well-established that "no oral modification" clauses have no preclusive effect when the parties engage in modification by valid contractual formalities. *Fritts v. Cloud Oak Flooring*, 478 S.W.2d 8, 14 (Mo.App. S.D.1972). "An express provision in a written contract that no rescission or variation shall be valid unless it too is in writing is ineffective to invalidate a subsequent oral agreement to the contrary." *Id.* (quoting 3A Corbin on Contracts § 763); *see also Doss v. EPIC Healthcare Mgt. Co.*, 901 S.W.2d 216, 221 (Mo.App. S.D.1995); *Rufkahr Const. Co. v. Weber*, 658 S.W.2d 489, 498 (Mo.App. E.D. 1983) (en banc). Consequently, the clause in Dr. Jennings's employment agreement restricting oral modification fails to bar subsequent oral contracts like the one Dr. Jennings alleges.

We conclude that Dr. Jennings's petition sufficiently stated a claim for a unilateral breach of an oral contract. Count III of Dr. Jennings's petition averred that a contractual offer was made to him during SSM's meetings with the Emergency Services physicians. He further averred that he accepted that offer, and supplied consideration, when he remained employed for the entirety of the requested timeframe. *See Cook*, 967 S.W.2d at 657 (an offer in a unilateral contract is accepted and consideration is supplied when the requested performance is rendered). Lastly, Dr. Jennings contended that since no severance was paid to him, the unilateral contract was breached and he suffered damages.

Dr. Jennings's petition sufficiently pled the required elements for a breach of a unilateral contract, and therefore, the trial court erred in dismissing Count III of Dr. Jennings's petition.

## B. Promissory Estoppel

■ In Count IV of Dr. Jennings's petition, Dr. Jennings made a claim of promissory estoppel against SSM. In response, SSM argued in its motion to dismiss that Dr. Jennings failed to demonstrate reliance because Dr. Jennings remained employed in the St. Joseph's emergency as the medical director for the third-party vendor following his termination by SSM. Had Dr. Jennings not remained employed with SSM during the transition, SSM asserted, Dr. Jennings would not have received that position with the third-party vendor. We disagree.

■ Promissory estoppel contains four elements: (1) a promise; (2) on which a party relies to his or her detriment; (3) in a way the promisor expected or should have expected; and (4) resulting in an injustice that only enforcement of the promise could cure. *Clevenger v. Oliver Ins. Agency, Inc.*, 237 S.W.3d 588, 590 (Mo. banc 2007). The promise underlying the cause of action must be definite and made in a contractual sense. *Id.*

Dr. Jennings's Count IV satisfied each element necessary to state a claim for promissory estoppel. First, he averred that SSM made an oral promise of severance if he remained employed through the transition. Next, Dr. Jennings averred that, as a result of that promise, he turned down other employment in order to stay at SSM through the transition, and his decision was precisely the reliance SSM would have expected in response to its promise. Lastly, Dr. Jennings averred he was injured as a result of staying employed during the transition because he passed on an opportunity for a job with better pay and benefits and ultimately received no severance payment, either. Those averments

adequately pled a claim of promissory estoppel.

SSM's contention that Dr. Jennings cannot plead reliance because he was subsequently employed by the third-party vendor, and would not have received that position had he opted to leave SSM, is mere supposition and unsupportive of its motion to dismiss.

Thus, we conclude that Dr. Jennings's sufficiently pled promissory estoppel, and therefore, the trial court erred in dismissing Count IV of Dr. Jennings's petition.

## C. Unjust Enrichment

Count V of Dr. Jennings's petition sought restitution from SSM, claiming that SSM was unjustly enriched the amount of severance it refused to pay Dr. Jennings. A claim for unjust enrichment has three elements: (1) a benefit conferred by a plaintiff on a defendant; (2) the defendant's appreciation of the fact of the benefit; and (3) the acceptance and retention of the benefit by the defendant under circumstances in which retention without payment would be inequitable. *Hertz Corp. v. RAKS Hospitality, Inc.*, 196 S.W.3d 536, 543 (Mo.App. E.D.2006). Demonstrating unjust retention of the benefit is the most significant element of unjust enrichment and also the most difficult to establish. *Executive Bd. of Mo. Baptist Convention v. Windermere Baptist Conference Ctr.*, 280 S.W.3d 678, 697 (Mo.App. W.D.2009). "Mere receipt of benefits is not enough, absent a showing that it would be unjust for the defendant to retain the benefit." *Id.*

Dr. Jennings averred the following in his unjust enrichment claim: (1) SSM was enriched by its retention of the severance pay it was obligated to pay Dr. Jennings for his service during the transition period; (2) SSM's enrichment was at the expense and detriment of Dr. Jennings; and (3) SSM's retention of the severance without payment to Dr. Jennings would be unjust and inequitable.

SSM argued in its motion to dismiss that Dr. Jennings's pleading fell short of establishing a claim for unjust enrichment because the severance was not a benefit conferred upon SSM by Dr. Jennings; it was merely an employment benefit that Dr. Jennings believes should have been conferred to him. Thus, SSM contended, Dr. Jennings failed to state a claim for unjust enrichment. We disagree.

The essence of unjust enrichment is that the defendant has received a benefit that it would be inequitable for him to retain. *Pitman v. City of Columbia*, 309 S.W.3d 395, 403 (Mo.App. W.D.2010). Here, Dr. Jennings pled that he conferred a benefit on SSM by remaining employed throughout the transition period. That benefit, according to Dr. Jennings, was conferred at SSM's request and following an oral promise by SSM to provide Dr. Jennings with severance, in addition to his regular salary. Yet, while SSM accepted and unjustly retained the benefit of keeping Dr. Jennings in his position, SSM nonetheless avoided compensating Dr. Jennings his promised severance. Essentially, taking all of Dr. Jennings's averments as true, Dr. Jennings provided SSM continuity in the St. Joseph's emergency department, while forfeiting other employment opportunities in exchange for the promised severance, and SSM retained the very severance it used to induce Dr. Jennings's continued employment.

Given our standard of review, we hold that Dr. Jennings sufficiently alleged the elements for unjust enrichment, and therefore, the trial court erred in dismissing Count V of Dr. Jennings's petition.

## D. Fraudulent Misrepresentation

In Count VI of Dr. Jennings's petition, he sought damages for fraudulent misrepresentation. His petition averred: (1) both the written severance policy published by SSM and SSM's oral promises to Dr. Jennings were false; (2) those representations were material because they induced Plaintiff to continue this employment; (3) SSM knew or should have known the representations were untrue; (4) SSM published its severance policy and made its oral promises with the intent that Dr. Jennings would act in reliance upon them; (5) Dr. Jennings did in fact rely on those promises and published policies without actual knowledge or reason to know of their falsity; and (6) Dr. Jennings suffered pecuniary losses because he was not paid severance.

SSM argued in its motion to dismiss that Count VI failed to state a claim due to the pleadings' failure to comply with Rule 55.15. We agree. Under Rule 55.15, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Rule 55.15. No claim is stated without compliance with Rule 55.15. *Birkenmeier v. Keller Biomedical, LLC*, 312 S.W.3d 380, 389 (Mo.App. E.D.2010). A failure on the part of the plaintiff to plead every essential element of a cause of action will render the claim defective and subject to dismissal. *Id.*

The elements of fraudulent misrepresentation are: (1) a false, material representation; (2) the speaker's knowledge of its falsity or his ignorance of its truth; (3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the representation; (5) the hearer's reliance on its truth; (6) the hearer's right to rely thereon; and (7) the hearer's consequent and proximately caused damages. *Misisc-*

*hia v. St. John's Mercy Med. Ctr.*, 30 S.W.3d 848, 868 (Mo.App. E.D.2000).

In this case, Dr. Jennings's Count VI was not pled with sufficient particularity. Dr. Jennings merely set forth allegations that mirrored the elements of fraudulent misrepresentation. For example, he alleged, "SSM knew, or in the exercise of reasonable care, should have known that [the representations to pay severance] were untrue." He also alleged, "[Dr. Jennings] had no reason to know ... the representations concerning severance pay were false until SSM failed to pay." Dr. Jennings failed to set forth any facts in support of these allegations. Therefore his allegations were not sufficient to state a fraudulent misrepresentation cause of action and the trial court did not err in dismissing Count VI of Dr. Jennings's petition.

### E. Negligent Misrepresentation

Dr. Jennings's final claim, Count VII, alleged he suffered damages as a result of SSM's negligent misrepresentation. The petition averred: (1) Dr. Jennings received SSM's published severance policy and its verbal representation to pay him severance; (2) SSM failed to exercise reasonable care or competence in communicating that information; (3) the representations regarding severance were false; (4) SSM intentionally provided that information to Dr. Jennings in connection with his employment; and (5) Dr. Jennings relied on that information and suffered a pecuniary loss when he was not paid severance. We conclude that the trial court erred in dismissing Dr. Jennings's Count VII.

A prima facie case of negligent misrepresentation consists of the following elements: (1) the speaker supplied or omitted information in the course of its business; (2) due to the speaker's failure

to exercise reasonable care, the information was false; (3) the speaker provided this information in a particular business transaction; (4) the listener justifiably relied on the information; and (5) as a result of the listener's reliance on the statement, he or she suffered a pecuniary loss. *Ziglin v. Players MH, L.P.,* 36 S.W.3d 786, 790 (Mo.App. E.D.2001).

In its motion to dismiss, SSM limited its argument to asserting that Dr. Jennings failed to plead supporting facts. Specifically, SSM argued that Dr. Jennings's Count VII failed to state a claim because it did not plead facts "giving rise to an inference that [SSM] provided false information to [Dr. Jennings] concerning the severance policy" or proving his reliance "upon any alleged oral representations regarding severance." Taking Dr. Jennings's averments are true, and liberally granting him all reasonable inferences, we find no merit to SSM's argument. *See Nazeri,* 860 S.W.2d at 306.

Dr. Jennings alleged he was promised severance if he remained employed by SSM during the transition period. However, despite having remained employed by SSM during that period, he nevertheless received no severance. Those averments clearly give rise to an inference that the information provided to Dr. Jennings concerning the payment of severance was false. In addition, Dr. Jennings averred that he remained employed throughout the transition as a result of SSM's promise to pay severance. That similarly supports a finding of reliance.

Accordingly, we conclude that Dr. Jennings sufficiently pled each element necessary to state a cause of action for negligent misrepresentation, and therefore, we find the trial court erred in dismissing Count VII of Dr. Jennings's petition.

### III. CONCLUSION

We affirm the judgment of the trial court as to Counts I, II, and VI. However, we hold the trial court erred in granting SSM's motion to dismiss as against Counts III, IV, V, and VII. We reverse and remand for proceedings consistent with this decision.

CLIFFORD H. AHRENS, P.J., and GARY M. GAERTNER, JR., J., concur.