

# In the
# Missouri Court of Appeals
# Western District

CHRISTOPHER FRENSLEY,   )
           )
   **Appellant,**    )
           )  **WD85968**
   **v.**       )  **OPINION FILED:**
           )  **DECEMBER 19, 2023**
DATAFILE TECHNOLOGIES, LLC, )
           )
   **Respondent.**   )

### Appeal from the Circuit Court of Clay County, Missouri
### The Honorable Daniel L. White, Judge

### Before Division One: Edward R. Ardini, Jr., Presiding Judge,
### Anthony Rex Gabbert, Judge, Janet Sutton, Judge

Christopher Frensley appeals the judgment of the Clay County Circuit Court finding against him in his claim for breach of contract. In four points on appeal, he claims the trial court erred in not finding the existence of a contract, in allowing an affirmative defense that was not pleaded, in finding he was bound by an employee handbook, and in not awarding him compensation. The judgment is affirmed.

## Facts

Christopher Frensley accepted employment with DataFile Technologies, LLC ("DataFile") pursuant to an offer letter dated July 16, 2019 ("the Offer Letter"). Frensley acknowledged by signing the Offer Letter that "I have read and understand the provisions of this offer of employment and accept the above job offer." Relevant to this case, the

Offer Letter stated, "This is an 'at-will' employment relationship, and you or DataFile Technologies may terminate it with or without notice, with or without cause, at any time."  The Offer Letter stated Frensley would receive "[p]aid time off (PTO) earned on an accrual basis rate of 160 hours per year, per Company policy.  Accrual begins on the first day of employment."

ScanSTAT Technologies, LLC ("ScanSTAT") acquired DataFile on or around March 27, 2020.  The two companies were integrated over time.  Frensley began directly reporting to the President of ScanSTAT after the acquisition.  ScanSTAT issued a new employee handbook in January 2021 that applied to Frensley's employment.  On February 8, 2021, Frensley electronically signed and submitted acknowledgment of the 2021 ScanSTAT employee handbook.

The signed acknowledgment states that the new handbook "explains what is expected of you as an employee of the company, as well as what you can expect from ScanSTAT as an employer."  It also states that "[t]he policies in the new handbook go into effect January 18, 2021."  The handbook states that "[t]he contents of this Handbook … may be modified at any time.  ScanSTAT Technologies retains the right to alter, amend, follow or not follow these procedures."  It further states:

> NO PROVISION IN THIS HANDBOOK IS INTENDED TO CREATE A
> CONTRACT BETWEEN SCANSTAT TECHNOLOGIES AND ANY
> EMPLOYEE, OR TO LIMIT THE RIGHTS OF SCANSTAT
> TECHNOLOGIES AND ITS EMPLOYEES TO TERMINATE THE
> EMPLOYMENT RELATIONSHIP AT ANY TIME, WITH OR WITHOUT
> CAUSE. THIS HANDBOOK IS A GENERAL STATEMENT OF POLICY,

TO BE MODIFIED AND APPLIED BY SCANSTAT TECHNOLOGIES AT ITS DISCRETION.

The handbook includes a section titled "Leave Policies" that states in relevant part that "[o]n termination of employment for any reason, employees forfeit any accrued, unused vacation days and will not be paid for an accrued, unused vacation unless otherwise required by law."

On April 2, 2021, Frensley submitted his notice of resignation to the President of ScanSTAT. At the time of his resignation notice, Frensley reported to the President of ScanSTAT. The notice stated "I have taken a position at another organization and I am resigning from my position at ScanSTAT Technologies." On April 4, 2021, Frensley submitted an amended resignation notice. That notice again stated he was "resigning from my position at ScanSTAT Technologies."

The current dispute arises from Frensley's claim that the Offer Letter is an employment contract that entitled him to payment of his accrued, unused paid time off ("PTO") upon the terminations of his employment in April 2021. It is undisputed that the total balance of Frensley's accrued, unused PTO at the time of his termination was 203.06 hours. Frensley filed a petition against DataFile for breach of contract in April 2022. He sought $12,691.25 for his unused PTO, $1,668.75 in statutory damages, interest, and costs.

The case proceeded to a bench trial, and the court entered judgment in October 2022. At trial, Frensley testified he understood his employment was at-will. The trial

3

court found that Frensley became an at-will employee of DataFile in July 2019. It found that the Offer Letter did not create an enforceable employment agreement because it did not contain a statement of duration. The at-will employment doctrine applies to claims for unpaid compensation. The trial court found that, because Frensley was an at-will employee, the terms and conditions of his employment were subject to change by DataFile at any time absent a promise not to change them. No evidence was presented that DataFile promised not to change Frensley's terms or conditions of employment. DataFile did change the terms and conditions of Frensley's employment when it applied the 2021 ScanSTAT handbook to Frensley's employment.

Frensley argued at trial that DataFile and not ScanSTAT was his employer. Thus, he argued that the ScanSTAT handbook could not apply to him. The trial court found that it was undisputed that both of Frensley's resignation notices stated that he was resigning from his position with ScanSTAT. It was undisputed that Frensley reported to the President of ScanSTAT at the time he submitted his resignation notices. The trial court also stated that Frensley signed his receipt of the 2021 ScanSTAT handbook which explicitly stated that the handbook "explains what is expected of you as an employee of the company, as well as what you can expect from ScanSTAT as an employer."

The trial court also relied on the testimony of the President of ScanSTAT. He testified DataFile's operations and ScanSTAT's operations were integrated after the acquisition. The President of ScanSTAT testified that the handbook applied to Frensley's

4

employment. The trial court found that that 2021 ScanSTAT handbook applied to Frensley's employment as of January 18, 2021.

The trial court held that Frensley could not prevail on his claim for breach of contract because he could not establish the existence of an employment contract. It further held that, even if Frensley could establish the existence of an employment contract based on the Offer Letter, that contract did not include a term to pay accrued, unused PTO upon termination of employment. Instead, the Offer Letter only stated that PTO would be accrued. Finally, the trial court held that the ScanSTAT handbook's provision of not paying accrued, unused PTO applied to Frensley at the time his employment terminated.

The trial court entered judgment in favor of DataFile. This appeal follows.

**Standard of Review**

"On review of a court-tried case, an appellate court will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Breeze Investments, LLC v. Rockwell*, 644 S.W.3d 591, 596 (Mo. App. W.D. 2022) (internal quotation marks omitted). "While we defer to the circuit court's factual findings, the court's legal conclusions and application of law to fact are reviewed *de novo.*" *Id*. (internal quotation marks omitted). "The interpretation of a contract presents a question of law subject to our *de novo* review." *Id*. (internal quotation marks omitted).

5

**Point I**

In his first point on appeal, Frensley claims the trial court erred in finding that the July 2019 Offer Letter was not a binding employment contract. He argues that an at-will employment contract is an unilateral contract that becomes binding and compensable when the party performs the work. Frensley states that he performed the work and earned the compensation pursuant to the contract.

"The at-will employment doctrine is well-established Missouri law." *Am. Fedn. of State, Cnty. and Mun. Employees, AFL-CIO, Council 61 v. State*, 653 S.W.3d 111, 122 (Mo. banc 2022) (internal quotation marks omitted). "Employment at-will is consistently defined as an employment relationship in which the employer and employee have the right to terminate employment at any time for any reason, or no reason at all." *Id*. "This well-recognized definition of at-will employment sets forth two conditions of employment: indefinite duration and termination without cause." *Id*. at 123.

"To establish a claim for breach of contract, the party asserting the claim must establish the existence of a contract, the rights and obligations imposed by the contract, a breach, and damages." *Scheck Indus. Corp. v. Tarlton Corp.*, 435 S.W.3d 705, 723 (Mo. App. E.D. 2014). "Employment-at-will is not a *legally enforceable employment relationship* because it is terminable at the will of either party, on a moment-by-moment basis." *Morrow v. Hallmark Cards, Inc.*, 273 S.W.3d 15, 26 (Mo. App. W.D. 2008) (emphasis in original). "It is sometimes called a 'unilateral contract' because there is an implied (if not expressed) promise that if the employee performs work as directed, the

6

employer will pay." *Id*. "But that does not make it a contract of *employment* that is legally enforceable." *Id*. (emphasis in original).

"Typically, [a]n essential element to an employment contract is a statement of duration." *Id*. (internal quotation marks omitted). "Alternatively, if there is not a specific duration expressed, the contract must be one that places limits on the employer's rights to discharge at will." *Id*. "One cannot have an employment contract without either an expressed duration or some specified limitations on discharge." *Id*.

"Terms and conditions of at-will employment are not enforceable at law as *contractual duties*." *Id*. (emphasis in original). The right to enforce conditions of employment should not be confused with the contractual right to bring a lawsuit in court. *Id*. "In at-will employment, either party can announce at any time that there are new conditions on either working or on providing work." *Id*. "The other can say yes or no." *Id*. "When the employment ends, so do the duties; this is because, as we have said, at-will employment, by its very moment-by-moment nature, is not a legally enforceable contract of employment." *Id*.

Frensley argues on appeal that the Offer Letter is an enforceable contract entitling him to compensation for his accrued, unused PTO. The Offer Letter does not contain a statement of duration and does not place specified limitations on discharge. It is not a valid employment contract. *See, e.g., Wallace v. St. Francis Med. Ctr.*, 415 S.W.3d 705, 707 (Mo. App. E.D. 2013) (rejecting an employee's breach of contract claim for

compensation for time she spent on-call because her employment agreement did not include the duration of the employment agreement and, thus, was not a valid contract).

"[T]he only legally enforceable promise created out of at-will employment is the employer's promise, whether express or implied, to pay the employee for the work performed by the employee." *Morrow*, 273 S.W.3d at 26. Frensley argues that the Offer Letter establishes a unilateral contract where he is paid for the work he actually did and that his status as an at-will employee does not invalidate that contract. He seems to be saying that payment for his accrued, unused PTO is part of his compensation that was to be paid for him for services rendered until the employment relationship was terminated. *See, e.g., Pratt v. Seventy-One Hawthorne Place Associates, L.P.*, 106 S.W.3d 608, 611 (Mo. App. W.D. 2003) ("Even assuming that Appellant was an at-will employee … until the termination of his employment …, an employer has an obligation to pay terminated employees for all wages, bonuses and/or commissions earned by the employee prior to the termination of the employment.").

The Offer Letter does not provide that Frensley will be paid for accrued, unused PTO when his employment terminated. The Offer Letter states in relevant part:

> In addition, your compensation package includes the following:
> - Paid time off (PTO) earned on an accrual basis rate of 160 hours per year, per Company policy. Accrual begins on the first day of employment.
> - Paid Company-observed holidays beginning with the first day of employment.

The Offer Letter does not state that Frensley would be paid for accrued, unused PTO when he terminated his employment. It does not address the ultimate disposition of PTO after it has accrued at all. *Contrast Jennings v. SSM Health Care St. Louis*, 355 S.W.3d 526, 534-35 (Mo. App. E.D. 2011) (petition stated a claim for breach of a unilateral contract where petition stated employer promised to pay severance pay if employee stayed through a transition period); *Cook v. Coldwell Banker*, 967 S.W.2d 654, 657 (Mo. App. E.D. 1998) ("Plaintiff adduced evidence of a unilateral contract … to pay a bonus under certain conditions at the end of the year."). Frensley did not establish the existence of a contract requiring DataFile to pay him for accrued, unused PTO. *See, .e.g, Kaskowitz v. Commerce Magazine, Inc.,* 793 S.W.2d 628, 630 (Mo. App. E.D. 1990) (summary judgment against employee on employee's claim for unpaid commissions was not error where employee was paid salary and commissions owed at time of termination and where employee could not establish the existence of contract to pay the employee for more than that). Given this, he cannot prevail on his claim for breach of contract.[1]

---

[1] The DataFile employee handbook applied to Frensley before it was replaced by the ScanSTAT handbook. The DataFile handbook provided for payment of accrued and unused PTO upon termination if certain conditions were met. Frensley reiterated at oral argument that the contract he claims was breached is the Offer Letter. That is the claim addressed in this opinion. As discussed, the Offer Letter is not a contract.

Frensley does not argue that the DataFile employee handbook created a contract. Moreover, that argument would be without merit. The DataFile handbook states multiple times that it is not creating a contract. It states it does not create "contractual commitments" or "obligations of the Company." The DataFile handbook also states that DataFile "at its option, may change, delete, suspend or discontinue any part or parts of the policies, procedures and benefits in this Book at any time without prior notice." An employee handbook which was unilaterally prepared by an employer and subject to change by the employer at any time cannot establish enforceable contractual rights. *Johnson v. Vatterott Educ. Centers, Inc.*, 410 S.W.3d

The point is denied.

## Points II-IV

In his second point on appeal, Frensley claims the trial court erred in entering judgment in favor of DataFile based on the ScanSTAT handbook. In his third point on appeal, Frensley claims the trial court erred in finding that Frensley was bound by the ScanSTAT handbook. In his fourth point on appeal, Frensley claims the trial court erred in finding he was not entitled to compensation pursuant to the contract. Given our ruling in Point I, we need not discuss these points on appeal. They are denied.

## Conclusion

The judgment is affirmed.

_____
Anthony Rex Gabbert, Judge

All concur.

---

735, 738 (Mo. App. W.D. 2013). An argument that an employer failed to provide the benefits described in an employee handbook cannot be the basis of a claim of breach of contract. *See W. Cent. Missouri Regl. Lodge No. 50 v. Bd. of Police Com'rs of Kansas City, Mo.*, 939 S.W.2d 565 (Mo. App. W.D. 1997) (noting that employees could have brought a claim for promissory estoppel if the elements had been met where employees claim the handbook promised annual pay increases); *Jennings v. SSM Health Care St. Louis*, 355 S.W.3d 526 (Mo. App. E.D. 2011) (finding employee could bring a claim for promissory estoppel where employee was not paid promised severance).